**Ruth Elizabeth WILKINSON, Plaintiff,**

v.

**SCHOOL BOARD OF the COUNTY OF HENRICO, et al., Defendants.**

**Civ. A. No. 83–0052–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

June 28, 1983.

Michael W. Smith, Rosemary G. Kenyon, Warren D. Harless, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for plaintiff.

Lewis T. Booker, G.H. Gromel, Jr., and Matthew J. Calvert, Hunton & Williams, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff is a teacher employed by the defendant School Board of the County of Henrico ("School Board"). She brings this action pursuant to 42 U.S.C. § 1983 and Virginia law, alleging the defendants suspended her employment and are considering dismissing her in retaliation for her bringing this suit, thus depriving her of a property right without due process of law and violating Virginia law, as well as violating her first amendment rights. She invokes the Court's jurisdiction pursuant to 28 U.S.C. §§ 1343(a)(3), 2201, 2202 and the Court's pendent jurisdiction over state law claims. The matter comes before the Court on cross-motions for partial summary judgment under Fed.R.Civ.P. 56(d).

In addition to the School Board as an entity, plaintiff has named as defendants five members of the School Board, both individually and in their capacity as members. The following defendants are also named both in their individual and official capacities: William C. Bosher, Jr., division superintendent of the School Division of the County of Henrico; Richard L. Boyer, assistant division superintendent; and Owen F. Baird, principal of the Elizabeth Holladay Elementary School, where plaintiff is currently assigned to teach.

The following facts are undisputed. Plaintiff has worked for the School Board as a teacher for some 22 years. She was suspended for five working days without pay, effective November 4, 1982, thus losing $545.70 in pay. The only document she received informing her of the suspension was a letter from Boyer dated November 3, 1982;[1] plaintiff alleges she received this

---

1. The letter stated:
    This is to advise you that you are hereby suspended without pay for five days, commencing November 4, 1982 and ending November 10, 1982, from your position as a teacher at Holladay Elementary School. This suspension is a result of your insubordination, noncompliance with school policies, and lack of cooperation in dealing with parental concerns during the past week.

letter after Baird had already told her on November 4 that she was suspended "effective immediately." Plaintiff was not offered a hearing prior to the suspension, and Boyer's letter made no mention thereof.

In her motion for partial summary judgment, plaintiff seeks a declaration that defendants violated her right to procedural due process by suspending her without providing a hearing before or after the suspension. She also seeks a declaration that the School Board violated Va.Code § 22.1–315(A) and breached its contract with her by suspending her in the manner in which she alleges. Finally, plaintiff seeks to establish that the defendants are not entitled to qualified immunity from liability for damages under § 1983. In their cross-motion for partial summary judgment, defendants seek to establish that failure to provide a hearing before suspending a teacher for five days without pay does not violate Va. Code § 22.1–315 or the plaintiff's contract. They seek to establish lack of liability in their official capacities and qualified immunity in their individual capacities. They also contend that the punitive damages plaintiff seeks are not recoverable as a matter of law.

## I. *Due Process*

■ Analysis of plaintiff's due process claim begins with ascertaining whether she has a property interest protected by the due process clause of the 14th amendment to the Constitution. Such a property interest must, of course, be established under state law. *See, e.g., Board of Regents v. Roth,*

408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Defendants admit that at all times relevant to this action, plaintiff has been employed under a continuing contract as required by Va.Code § 22.1–304. Defendants also admit that pursuant to that section, plaintiff is entitled to continuing contracts during good behavior and competent service and may be dismissed only for cause as provided in Va.Code § 22.1–307. Plaintiff bases her claim to a property interest on her continuing contract status, which she contends creates a legitimate expectation of continued employment.

> There is ... a protected property interest if a contract, either explicitly or implicitly, provides for continued employment that can only be terminated for good cause.

*Wooten v. Clifton Forge School Board,* 655 F.2d 552, 554 (4th Cir.1981) (citing *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1971)).

Defendants argue that plaintiff's continuing contract status gave her a property interest, if any, only in not being *dismissed;* they contend this right does not include a right not to be *suspended.*[2] Their position is that any property interest plaintiff has in not being suspended flows from Va.Code § 22.1–315, entitled "grounds and procedure for suspension." Relying principally on *Arnett v. Kennedy,* 416 U.S. 134, 152, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974), defendants also contend that the Court must look to the statutory scheme that created

Plaintiff alleges that she was suspended without the good and just cause required by Va. Code § 22.1–315. She also contends that the suspension was arbitrary and capricious, in violation of her substantive due process rights. These allegations, however, are not covered by her motion for partial summary judgment. The motion also does not cover her allegations concerning the defendants' alleged intention to dismiss her.

2. In theory, it appears possible for procedural due process analysis to involve determinations as to each of three elements: the existence and scope of the property right; what sorts of deprivations of the right are cognizable; and what

process is due upon such a deprivation. Defendants' mode of analysis collapses the first two elements into a single one. As a practical matter, this mode of analysis is probably most useful, since the scope of the property right will most often be defined in terms of what constitutes a cognizable deprivation. *See, e.g., Wooten v. Clifton Forge School Board,* 655 F.2d at 554–55 (property interest in continued employment did not include right not to be reassigned). The Court finds no value in attempting to isolate another element and subject it to separate analysis; such doctrine-building only increases the likelihood of reaching anomalous results.

the property right in order to determine what process is due.

▇ The Court is satisfied that plaintiff does have a property interest in not having her employment suspended and that the interest can be grounded in either statutory provision. Plaintiff's property interest in continued employment provided by Va.Code § 22.1–307 includes a right not to have such employment interrupted by a suspension. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (students' property interest in education includes right not to be suspended from school). Thus, the continuing contract statute provides an alternative source of plaintiff's property interest in not being suspended, which interest is more explicitly established in Va.Code § 22.1–315.

▇ The Court further is satisfied that it need not decide which statute more properly provides the property interest, as nothing material to this action turns on that question. In *Detweiler v. Commonwealth of Virginia Department of Rehabilitative Services,* 705 F.2d 557, 558–59 (4th Cir. 1983), the Court of Appeals for the Fourth Circuit examined *Arnett v. Kennedy, supra,* to determine the source of the requirements as to what procedures accompany a property right. Contrary to the instant defendants' position that the statute which provides the right also dictates the required procedures, the Fourth Circuit found:

> a majority of the [Supreme] Court have concluded that the employee is entitled to the protection afforded by the due process clause. Justice White (concurring and dissenting) stated in *Arnett,* 416 U.S. at 185 [94 S.Ct. at 1659]: "While the State may define what is and what is not property, once having defined those rights the Constitution defines due process, and as I

understand it six members of the Court are in agreement on this fundamental proposition."

705 F.2d at 559 (footnote omitted). Regardless of which statute provides the property interest, the due process clause is what determines the procedures that must be followed in depriving someone of that interest.[3]

In determining what process is due, the Court is to balance the rights of the parties, giving consideration to these factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Defendants concede that plaintiff was not given a hearing before the suspension. They contend, however, that the post-suspension remedies afforded plaintiff are adequate to satisfy the requirements of the due process clause. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

In considering the possible adequacy of plaintiff's post-suspension remedies, the Court accepts as factual the representations of the former counsel for defendants[4] at the hearing on their motion to dismiss, April 8, 1983, that the School Board is prepared to give plaintiff a hearing as soon as practicable. The Court is satisfied that as of that date, plaintiff had adequate notice of an opportunity for a hearing.[5] Thus, the

---

3. Defendants would not have gained anything had the Court concluded that Va.Code § 22.1–315 established the procedural requirements: as the Court concludes *infra,* defendants failed to satisfy the requirements of that statute.

4. Because of a conflict of interest, counsel for the defendants at the April 8, 1983 hearing

have withdrawn from the case and have been replaced.

5. The defendants have submitted the depositions of certain school and School Board officials indicating that shortly after plaintiff's suspension, these officials offered to help "look into" the suspension. Such offers were not adequate to provide plaintiff notice of any op-

issue before the Court is not, as plaintiff contends, whether defendants violated her due process rights by failing to provide a hearing either before or after the suspension. The only question as to due process properly before the Court at this time is whether in failing to provide plaintiff a pre-suspension hearing the defendants deprived her of a property interest without due process of law.

Bearing in mind the standard of *Mathews v. Eldridge, supra,* the Court cannot say that, standing alone, the failure to provide a pre-suspension hearing violated plaintiff's due process rights. While that standard leads the Court to conclude that plaintiff was entitled to at least notice and an opportunity to be heard, *see Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Court cannot say that such procedures must precede a suspension to accord due process. The teacher can receive appropriate relief, such as an award of back pay and expungement of the incident from the personnel files, if the suspension is later found to have been wrongful.

The *Mathews v. Eldridge* standard, *supra,* explicitly calls for a comparison of substitute procedures. Of most relevance to the instant case is the factor of "the risk of erroneous deprivation," 424 U.S. at 335, 96 S.Ct. at 903. On balance, each possible time for the hearing seems to involve an equal risk. On the one hand, in a pre-suspension hearing, the School Board might be influenced by what at least the school administration perceives to be the urgency of the situation and thus might make a rash, erroneous decision. On the other hand, the School Board might find it exceedingly difficult to overturn the school administration's action after the fact, and so erroneously let a wrongful action stand. In sum, a pre-suspension hearing appears neither clearly preferable nor constitutionally required; a post-suspension hearing would not clearly be inadequate.

Plaintiff has not yet established that the suspension violated her due process rights as a matter of law, and her motion for summary judgment on that ground will be denied. At the time of trial, plaintiff will have to establish that the entire range of procedural safeguards surrounding the suspension, including any procedures occurring between the time of the suspension and the time of trial, did not satisfy the requirements of due process.

## II. *Official Liability*

Defendants contend that the School Board and each defendant in his official capacity cannot be liable for damages under 42 U.S.C. § 1983. The analysis relevant to the School Board applies equally to the defendants in their official capacities. *See Monell v. Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original). Thus, the defendants cannot be liable merely for employing Bosher, who allegedly suspended plaintiff without affording her due process.

[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's *policy or custom,* whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

portunity for a hearing; they were not "reasonably calculated, under the circumstances, to apprise" her that a hearing was available. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The representations made at the April 8, 1983 hearing thus constitute the first adequate notice to plaintiff of which the Court has been made aware.

Of course, the Court does not now have occasion to consider whether the procedural safeguards involved in such a hearing would be adequate to provide due process or to consider whether plaintiff will have been denied due process if defendants now fail to provide a hearing following a request.

inflicts the injury that the government as an entity is responsible under § 1983. *Id.* at 694, 98 S.Ct. at 2037 (emphasis added).

▮ There is evidence before the Court that during the summer of 1982, defendant Bosher, division superintendent of the School Division, announced to the School Board that henceforth he intended to suspend teachers without pay, without a hearing, when disciplinary measures were needed. The School Board apparently did nothing to indicate any disapproval of such a practice. The plaintiff thus contends that her suspension without pay and without a hearing was in furtherance of the School Board's policy. Whether or not the Court ultimately accepts plaintiff's contention, the Court certainly cannot now say as a matter of law that no policy had been established with regard to suspensions.[6] There is at least a factual issue as to whether a policy existed. *See* Fed.R.Civ.P. 56(c). Defendants' motion for summary judgment on this issue will be denied.[7]

### III. *Qualified Immunity and Punitive Damages*

The defendants in their individual capacities seek to establish immunity from liability for damages under § 1983.

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

... On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time the action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738–2739, 73 L.Ed.2d 396 (1982) (footnote omitted). The question raised by both motions for partial summary judgment is whether the law at the time of the suspension[8] was so clearly established that the defendants should have known their conduct with regard to the suspension violated plaintiff's rights.

The *Harlow* decision quoted *supra* indicates at several points that the Court is to focus on the defendants' *conduct. See id.* at 818, 102 S.Ct. at 2738. The question thus is not whether the defendants should have known that one may not be deprived of property without due process, but rather whether they should have known that their conduct in regard to the suspension would amount to a deprivation of property without due process.

▮ As the Court has indicated, it is not now clear whether defendants have completed their course of conduct with regard to the suspension. They may or may not provide a post-suspension hearing, with or without a request by the plaintiff. Until the Court knows the extent of the defendants' conduct, the Court cannot evaluate

---

**6.** Defendants argue that a custom cannot be established by a single incident. That principle, however, comes into play only when an outside observer is attempting to infer the existence of a custom merely from repeated *behavior* patterns. Where, as here, the policy allegedly has been *announced* and actions taken in accordance with the announced policy, it may be possible to establish the existence of the policy from a single incident.

The plaintiff alleges the policy announced and followed was to suspend teachers without a hearing. If defendants ultimately provide plaintiff a hearing, *see supra,* they may undercut plaintiff's theory that such a policy exists.

In so doing, they may also satisfy the requirements of due process, thus making the question of immunity from § 1983 damages moot.

**7.** Plaintiff has not moved for summary judgment on this issue, as plaintiff concedes there is a factual dispute concerning Bosher's statement to the School Board in the summer of 1982.

**8.** The motions do not pertain to the defendants' alleged consideration of the possibility of dismissing plaintiff; they only pertain to the suspension.

whether the conduct violated plaintiff's constitutional rights, let alone whether defendants should have known their conduct would violate plaintiff's constitutional rights. Accordingly, each motion for partial summary judgment on this issue will be denied.

Similarly, the availability *vel non* of punitive damages in plaintiff's § 1983 claim turns on an assessment of defendants' conduct as a whole.

> We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's *conduct* is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

*Smith v. Wade,* —— U.S. ——, ——, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983) (emphasis added). Resolution of this issue, too, must await trial; defendants' motion for partial summary judgment that punitive damages are not available will be denied.

### IV. *Virginia Suspension Statute*

Plaintiff contends that in suspending her in the manner she alleges, defendants violated Va.Code § 22.1–315(A) [9] and breached her employment contract; defendants contend that as a matter of law, their actions did not constitute such a violation or breach. No facts are in dispute with regard to this issue.

Each side has prepared a phrase-by-phrase exegesis with regard to Va.Code § 22.1–315(A). The Court will attempt to set forth the subsection's essential elements somewhat more succinctly. The first sentence provides, in effect, that a teacher may be suspended either "for good and just cause" or when charged with a serious crime. The second sentence provides, in effect, that a teacher suspended simply "for good and just cause" cannot be suspended for more than sixty days and is entitled to notice and a hearing if he or she is suspended for more than five days. The purport of the third sentence is the principal issue in conflict. It states, "Any teacher *so suspended* shall continue to receive his or her then applicable salary unless and until the school board, after a hearing, determines otherwise" (emphasis added). The Court must determine whether "so suspended" refers to teachers suspended five days or less, such as plaintiff, in addition to whatever other group or subgroup it may be intended to cover.

The Attorney General of Virginia has issued an opinion directly indicating that the requirement of providing a hearing before suspending a teacher without pay applies equally to teachers suspended five days or less (except when a teacher is suspended upon being charged with a serious crime). *See* 1982–1983 Op. Att'y Gen. (Jan. 11, 1983) (directed to Hon. Adelard L. Brault). This opinion is apparently the only authority directly construing the subsection. "The construction of a statute by the Attorney General is persuasive and entitled to considerable weight." *Andrews v. Shepherd,* 201 Va. 412, 415, 111 S.E.2d 279, 282 (1959).

The defendants attack this opinion as not properly focusing on the meaning of the phrase "so suspended" in the subsection. They also note that "[o]pinions of the Attorney General are no more than guidelines for the benefit of public officials where [the Virginia Supreme Court of Appeals] has

---

9. § 22.1–315. Grounds and procedure for suspension. —A. A teacher may be suspended for good and just cause when the safety or welfare of the school division or the students therein is threatened or when the teacher has been charged by summons, warrant, indictment or information with the commission of a felony or a crime of moral turpitude. Except when a teacher is suspended because of being charged by summons, warrant, indictment or information with the commission of a felony or a crime of moral turpitude, a division superintendent or appropriate central office designee shall not suspend a teacher for longer than sixty days and shall not suspend a teacher for a period in excess of five days unless such teacher is advised in writing of the reason for the suspension and afforded an opportunity for a hearing before the school board in accordance with §§ 22.1–311 and 22.1–313. Any teacher so suspended shall continue to receive his or her then applicable salary unless and until the school board, after a hearing, determines otherwise.

made no definitive interpretation of the law." *In re Department of Corrections,* 222 Va. 454, 463, 281 S.E.2d 857, 862 (1981); *see also Richard L. Deal & Associates, Inc. v. Commonwealth,* 299 S.E.2d 346, 348 (Va. 1983) (opinion of Attorney General not controlling, but an aid in construing legislative intent).

Should this battle of the maxims of statutory construction [10] be resolved in defendants' favor, they would still not be in a position of countering plaintiff's questionable authority with any of their own. More importantly, the Court finds the Attorney General's interpretation more reasonable than the one the defendants urge. Under defendants' interpretation, a teacher suspended for five days without pay would receive no hearing, whereas a teacher suspended for six days with pay would receive a prior hearing. The Attorney General's interpretation adds levels of procedural protection as the severity of the discipline is increased. This scheme makes eminently more sense, and the Court concludes this interpretation reflects the intent of the Virginia General Assembly.

■ The Court concludes that under Va. Code § 22.1–315(A), a school board must provide a hearing before suspending a teacher for any length of time without pay. If the school administrators wish to avoid putting the School Board to the effort of holding a hearing for a minor infraction, as they contend, they may simply suspend a teacher *with* pay for five days or less.[11] Defendants' admitted failure to provide plaintiff a pre-suspension hearing before the School Board violated Va.Code § 22.1–315(A) and additionally breached plaintiff's continuing contract.[12] Plaintiff will be granted partial summary judgment on this issue.

An appropriate order will issue.

---

**10.** For every maxim of statutory construction there is an equal and opposite countermaxim. *See* Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed,* 3 Vand.L. Rev. 395, 400–06 (1950).

**11.** The Court cannot take seriously defendants' argument that suspending a teacher without pay amounts to giving him or her a "paid vacation" (though the Court notes that defendant Bosher indicated in his deposition that he viewed a suspension with pay in that way). The Court has no doubt that if the defendants were reviewing a teacher's record while con-

sidering whether to dismiss the teacher, they would consider any previous suspensions with pay to constitute evidence of the teacher's deficiency, not evidence that the teacher had earned a reward. Being suspended with pay affects the teacher's current reputation as well as the teacher's future job stability.

**12.** The contract incorporates state law, so that violation of the state law also amounts to breach of the contract. *See County School Board v. McConnell,* 215 Va. 603, 608, 212 S.E.2d 264, 268 (1975).