## CIRCUIT COURT OF ROCKINGHAM COUNTY

Marvin E. Luckett

v.

City of Harrisonburg School Board et al.

August 5, 1988

Case No. (Chancery) 12030

By JUDGE PORTER R. GRAVES, JR.

The matter is before the Court upon the bill of complaint filed by the plaintiff, represented by Roger A. Ritchie, Esq., on January 26, 1988, against the defendants, School Board of the City of Harrisonburg, Virginia (School Board), C. Alan Hiner, Superintendent, and the six individual members of the School Board in their individual and official capacities. The defendants are represented by Phillip C. Stone, Esq., Douglas L. Guynn, Esq., Jay T. Swett, Esq., and R. Craig Wood, Esq.

The defendants filed a demurrer to the bill of complaint on February 17, 1988.

By order entered on April 4, 1988, as the result of proceedings before the Court on March 23, 1988, counsel agreed and the Court ordered a schedule for the parties to file briefs and set oral argument upon the defendants' demurrer on June 9, 1988, at 3:00 p.m.

The parties generally followed the briefing schedule, and the argument on the demurrer occurred at the designated time. The case presents a number of complex issues. Numerous cases were cited and provided to the Court.

The facts will not be repeated since the matter is before the Court on the defendants' demurrer.

A demurrer to the bill of complaint admits the truth of all facts properly pled. *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

School Boards make many personnel decisions on a daily basis, and the Courts have limited functions in reviewing them. *Bishop v. Wood*, 426 U.S. 341, 349-350 (1976). The plaintiff agrees with the defendants' view of the limited role of the Court where there is credible evidence to support the School Board decision in an employment or discipline context directly regulated by state statute which makes their decision final. However, plaintiff claims that the Court's role is not so limited when the allegation is a "deprivation of a Constitutional right."

A lot of attention is given by the parties to the classification of the plaintiff. The plaintiff claims he was a "tenured" teacher. The defendants claim his status was "continuing contract" and his contract rights are no broader than the statutes (Virginia) which creates those rights.

In *Wilkinson v. School Board of the County of Henrico, et al.*, 566 F. Supp. 766 (E.D. Va. 1983), the Court held that plaintiff had a property interest in a continuing contract status under Virginia law. Once a property interest is determined to exist under state law, "the due process clause is what determines the procedures that must be followed in depriving someone of that interest," *Wilkinson*, p. 769.

The School Board by virtue of Article VIII, § 7 of the Virginia Constitution, obtains its authority to conduct school operations in the City of Harrisonburg. The Code of Virginia, 1950, as amended (Code), § 22.1-313(A) provides: "the school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals, suspensions and placing on probation." Code § 22.1-304 states that "a school board may reduce the number of teachers, whether or not such teachers have reached continuing contract status, because of decrease in enrollment or abolition of particular subject."

Also, Code § 22.1-306 provides, "accordingly, the term 'grievance' shall not include a complaint or dispute

by a teacher relating to . . . (v) discharge, layoff or suspension from duties because of decrease in enrollment, decrease in enrollment in or abolition of a particular subject, or insufficient funding . . . (viii) the methods, means, and personnel by which the school division's operations are to be carried on."

The defendants concede that "Tenure" confers a general property right and that plaintiff was not tenured. Plaintiff contends that he was tenured and that the distinction between "tenure" and "continuing contract" does not exist in Virginia. *Dennis v. County School Board of Rappahannock County*, 582 F. Supp. 536 (W.D. Va. 1984).

The Virginia statutes cited above are very precise with respect to School Boards' final authority over personnel matters (§ 22.1-313), reduction in number of teachers regardless of continuing contract status for decrease in enrollment (§ 22.1-304), and the exclusion of discharge because of decrease in enrollment in a particular subject from the term "grievance" (§ 22.1-306).

In determining Constitutional due process, the defendants claim that under Virginia law they had a statutory right to terminate plaintiff's employment because of decrease in enrollment, and the plaintiff had no constitutionally protected due process rights because Virginia law grants none under these circumstances. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Defendants also claim that even if plaintiff had a property right, the plaintiff was entitled at most to notice and an opportunity to be heard. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1984). To the contrary, plaintiff argues that a cause of action has been stated for a denial of his right to procedural and substantive due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983, and Article I, § 11, of the Virginia Constitution.

The *Wilkinson* case recognizes that a Virginia teacher on "continuing contract" has a property interest entitling him to due process protection.

## I. *Procedural Due Process*

We must now turn to the issue of what procedural due process should be afforded to the plaintiff.

The plaintiff recognizes that "less rigorous procedural requirements attach to a layoff, nevertheless, teacher tenure statutes have been held to invest a teacher's employment 'with a sufficient degree of permanence to prevent termination or layoff, for whatever reason, without some minimal procedural protection afforded by the Fourteenth Amendment . . .' *Johnson v. Board of Regents of University of Wisconsin*, 377 F. Supp. 227, 235 (W.D. Wis. 1974), *aff'd.* 510 F.2d 975 (7th Cir., 1975)." Plaintiff's memorandum filed May 10, 1988, p. 11. The plaintiff also cites other cases setting forth these minimal procedures.

In his pleading, the plaintiff admitted he appeared before the School Board at its meeting on March 17, 1987, and hand delivered a written response dated March 17, 1987, to Defendant Hiner's recommendation, attached as "Exhibit B" to the bill of complaint. That appearance was in response to Defendant Hiner's notifying plaintiff on March 11, 1987, he would recommend plaintiff's position be eliminated because of a decrease in enrollment. There was no allegation that plaintiff further participated in the meeting. Again, by letter dated March 31, 1987, filed with the Bill of Complaint as Exhibit "A," from Superintendent Hiner, the plaintiff was notified of the April 14, 1987, meeting where Superintendent Hiner would recommend to the School Board that because of enrollment, plaintiff's position should be terminated. The March 31, 1987, letter further stated, "I was glad to have the opportunity to share with you the information regarding current enrollment data, staffing needs, and scheduling considerations before your discussion with the School Board on March 17, 1987."

The plaintiff did not even appear at the April 14, 1987, meeting even though the March 31, 1987, letter from Superintendent Hiner invited the plaintiff "to attend the meeting and, again, to make any presentation you wish to the school board." The letter also stated, "If you have any questions, please do not hesitate to call me."

The March 31, 1987, letter alluded to the fact that Superintendent Hiner and the plaintiff discussed information regarding current enrollment data, staffing needs, and scheduling considerations before the March 17, 1987, School Board meeting. Now, the plaintiff claims that he was not afforded the same information the School Board had which

was necessary to properly present evidence in his own behalf.

If the plaintiff had rights, he sat on them. In light of the failure of the plaintiff to respond to the notice and opportunity to be heard and to do virtually nothing in pursuance thereof, he has lost those rights. I find that the defendants should prevail upon their demurrer as to procedural due process of law.

## II. *Liberty Interest*

Plaintiff alleges that Defendant Hiner on June 5, 1987, informed plaintiff "that he could not give plaintiff references for jobs plaintiff was seeking while he was filing legal actions." Also, plaintiff alleges "Defendant Hiner asked plaintiff whether he wanted a job or did he want to continue his legal actions," (Bill of Complaint, paragraph 27).

The plaintiff seems to claim that he has a right to positive job references when his personnel file contains positive teacher evaluations.

As the defendant states "a liberty interest requiring procedural due process may arise where state action impugns 'a person's good name, reputation, honor or integrity . . .' *Robertson v. Rogers*, 679 F.2d 1090, 1091 (4th Cir. 1982)."

I can find no authority that requires a public employer to give a positive job reference for a former employee. The failure of the public employer to respond cannot be considered a retaliatory act. To hold that silence produces negative results to the plaintiff's good name, reputation, honor or integrity would produce a ridiculous result.

I find that the defendants should prevail, at this stage, regarding the "Liberty Interest" issue. For the foregoing reasons, I will not address procedural due process regarding the liberty interest.

## III. *Substantive Due Process*

Plaintiff alleges in Paragraph 24 of the bill of complaint that it was arbitrary and capricious for defendants to abolish his band teacher position and it violated plaintiff's substantive due process rights.

The parties seem to agree on the controlling case of *Gwathmey v. Atkinson*, 447 F. Supp. 1113 (E.D. Va. 1973), which recognizes a decision may be arbitrary and capricious in one of three ways:

1. It may be unrelated to the educational process or to working relationships within the educational institution;

2. It may be arbitrary in that it is trivial;

3. It may be arbitrary if it is wholly unsupported by a basis in uncontested fact either in the statement or reasons itself or in the teacher's file.

at 1118.

Although the plaintiff's bill of complaint and exhibits attached thereto give the Court doubt regarding his allegations of arbitrariness and capriciousness, the factual allegations by the plaintiff are sufficient to withstand demurrer by the defendants. However, I believe that defendants are correct, and discovery on the Constitutional issue will be limited to whether the School Board had before it sufficient information to reasonably conclude that band enrollment was, in fact, declining.

### IV. *Breach of Contract*
### (Count II of Bill of Complaint)

A. The defendant argues, and the plaintiff agrees, that the individual defendants are not liable for the plaintiff's contract with the School Board. *See Drumheller v Louisa County School Board*, Civil Action No. 86-0568-R (E.D. Va., December 23, 1986). The demurrer is sustained as to Count II on behalf of all defendants, except the School Board, acting in their individual capacities.

B. The plaintiff's written contract with the School Board was not attached to the bill of complaint but was filed with the demurrer by the defendants. The defendants are correct in that the plaintiff had pled breach of the written contract, and since the defendants could move the Court *craving oyer*, the contract can be considered.

Paragraph 9 of the contract provides: "This contract shall not operate to prevent discontinuance of a position as provided by law."

The defendants' claim that the plaintiff's position was eliminated as provided by the Code and the only issue is whether the discontinuance of plaintiff's position is consistent with the Code.

Plaintiff argues that the defendants' reason for eliminating his position for the reason given, i.e. decline in student enrollment, was not the real reason based upon the facts existing, and it was arbitrary and capricious because it was a "sham."

The case of *Spotsylvania School Board v. McConnell*, 215 Va. 603 (1975), relied upon by the plaintiff involves a trial *de novo* without a jury for breach of contract terminating the teacher's contract for her conduct and performance. The factual situation is quite different in *McConnell* as distinguished from the present case. No demurrer was filed in *McConnell* by the defendants. Also, the issues in *McConnell* are quite different from the issues presented here.

If the plaintiff's position was terminated because of a decline in enrollment in his program, the Court agrees with the defendants that it is specifically sanctioned by the Code. I am of the opinion that the right to a fact finding panel and grievance procedure under the Code does not exist in the present case. To hold otherwise would be to contravene the clear language of the Code.

*McConnell, supra*, at p. 607, provides: "The great weight of authority is to the effect that the decision of a school board will not be disturbed by the Courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain its action."

*McConnell* further states at p. 607 that:

> [T]he Court will not substitute its judgment for that of the public body or officer, but rather must decide whether the determination of the school board should be set aside either because it had no basis in fact [citation omitted], or because it was arbitrary and capricious [citation omitted], or because it constituted

an abuse of discretion [citation omitted]. Where there is a rational legal and factual basis for a school board's administrative determination, the Court will not overturn such decision and substitute its own judgment even if it would have reached a contrary conclusion [citation omitted].

To the extent that the bill of complaint alleges facts that the Defendant, School Board, acted contrary to the *McConnell* standard by saying the elimination of plaintiff's position was because of a decline in enrollment while it was really for other reasons, the demurrer will be overruled.

### V. *Wrongful or Tortious Discharge*
### (Count III of Bill of Complaint)

Count III of the bill of complaint pleads a cause of action for wrongful (tortious) discharge in violation of public policy arising out of Virginia Code § 22.1-306 et seq. subject only to limitations set forth in § 22.1-304 and § 22.1-307.

Even if the defendant School Board's action contravened those Code sections, would its action be a wrongful discharge?

In *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985), it was held that a tort action for wrongful discharge is available in Virginia "only when the discharge contravenes some clear mandate of public policy, for example, where an employer retaliates against an employee for exercising a statutorily defined right," as set forth in page 15 of Defendants' memorandum.

In *Miller v. SEVAMP, Inc.*, 234 Va. 462 (1987), the *Bowman* rule was narrowed by failing to make actionable those discharges involving only "private rights or interests." I have considered the argument of the plaintiff in reference to Article VIII of the Virginia Constitution and *Dennis v. County School Board of Rappahannock Co.*, 582 F. Supp. 536 (W.D. Va. 1984), but find that in light of the specific Code sections above, the action of the defendants does not constitute a wrongful or tortious discharge. I am of the opinion that the rights of the

plaintiff are private, strictly regulated by the Code, and not established for protection of the general public. The tort of wrongful discharge is very limited in Virginia. This case does not fall within these narrow rules. The defendants' demurrer is sustained as to Count III of the Bill of Complaint.

## VI. *Intentional Infliction of Emotional Distress*

Count IV of the bill of complaint deals with the plaintiff's claim for intentional infliction of emotional distress.

As the defendants state in *Womack v. Eldridge*, 215 Va. 338, 342 (1974), it was held that in order to state such a cause of action, plaintiff must allege facts, which if proven establish that: (1) the Board's conduct was intentional or reckless; (2) the Board's conduct was extreme and outrageous; (3) the Board's wrongful conduct caused emotional distress; and (4) the emotional distress was severe.

The Court finds that the plaintiff's allegations insufficiently state a cause of action which should survive the defendants' demurrer. In accordance with *Womack*, there must be facts alleged, which if proven, establish the criteria as set forth above. The plaintiff has failed in that regard. The plaintiff generally relies upon conclusions as to how the defendants acted, not upon facts which would allow those conclusions to be reached.

## VII. *Punitive Damages*

Under certain circumstances, punitive damages in a § 1983 action can be recovered by a plaintiff. *See Smith v. Wade*, 461 U.S. 30 (1983). The plaintiff and the defendants both agree with the *Wade* decision. However, the plaintiff must not merely make allegations of certain type conduct by the defendants but must plead with reasonable certainty the facts which, if proven, would allow an inference of the motives necessary to award punitive damages in accordance with *Kamlar Corp. v. Haley*, 224 Va. 699, 706 (1983). The allegations in the plaintiff's bill of complaint are insufficient as a matter of law to survive the defendants' demurrer.

## VIII. *Immunity*

At the present time, I will defer ruling with respect to the issues of immunity.

## IX. *Preliminary Injunction*

This issue becomes moot and will not be addressed since plaintiff in his memorandum filed herein on May 10, 1988, does not wish to pursue his request for a preliminary injunction but reserves the right for injunctive and equitable relief as provided for by 42 U.S.C. § 1983 upon adjudication of the merits of his claim.

## X. *Attorneys' Fees*

The Court agrees with the plaintiff that the request for attorneys' fees by the plaintiff and the defendants is premature at this stage of the proceedings.