James FRANCIS, Donna Francis, by and on behalf of themselves, and Melissa Francis, Jonathan Francis, Christopher Francis, Nikki Francis and Justin Francis, all minors, Plaintiffs,

v.

Helen M. BARNES, et al., Defendants.

No. Civ.A. 3:97CV658.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 30, 1999.

Wayne D. Inge, Attorney at Law, Roanoke, VA, for James Francis, Donna Francis, plaintiffs.

Daniel T. Balfour, Beale, Balfour, Davidson, Etherington & Parker, Richmond, VA, Amy Coleman Balfour, Beale, Balfour,

Davidson, Etherington & Parker, PC, Richmond, VA, for Helen M. Barnes, Jane D. Wellons, Brenda J. Jennings, Michael H. Anderson, John W. Hankley, Robert G. Zava, Alvester L. Edmonds, Carol Collins, County of Lunenburg, defendants.

Beverly Constance Powell, Eure, Kincer & Bell, PC, Richmond, Va, for Beverly Powell, defendant.

Beverly Constance Powell, Eure, Kincer & Bell, PC, Richmond, VA, Wayne D. Inge, Attorney at Law, Roanoke, VA, for Melissa Francis, Jonathan Francis, Christopher Francis, Nikki Francis, Justin Francis, defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court for resolution following a bench trial conducted on September 22, 1999. After consideration of the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law, pursuant to Federal Rule of Civil Procedure 52. The Court incorporates by reference Plaintiffs' exhibits, the trial testimony of witnesses, and the Court's record.

### I. FINDINGS OF FACT

1. Plaintiffs herein, James Francis and Donna Francis (the "Francises") have five minor children, Melissa Francis, Jonathan Francis, Christopher Francis, Nikki Francis and Justin Francis. (Trial Testimony of Donna Francis)

2. Mr. and Mrs. Francis and their family moved to Lunenburg County during September of 1993 and have resided continuously in Lunenburg County ever since. (Trial Testimony of Donna Francis)

3. The four oldest Francis children, Melissa, Jonathan, Christopher, and Nikki, all attended public school in Lunenburg County from September, 1993 until June, 1996. (Trial Testimony of Donna Francis)

4. In the summer of 1996, the Francises became aware through general reading that Virginia Code § 22.1–257(B) provided an exemption from compulsory school attendance due to bona fide religious training or belief. Upon becoming aware of this exemption, Mr. and Mrs. Francis decided to home school their children and to apply for a religious exemption from compulsory attendance beginning with the 1996/97 school year. (Trial Testimony of James Francis)

5. In furtherance of this decision, on August 23, 1996, Mr. and Mrs. Francis wrote Janet Johnson, the guidance counselor of the elementary school that Melissa, Jonathan, Christopher, and Nikki were attending. The letter informed Ms. Johnson that these four children would not be attending school and would be enrolled at The Christian Liberty Academy Satellite Schools. (Joint Exhibit # 1 and Trial Testimony of Donna Francis)

6. On October 28, 1996, Bill Mullins, Division Attendance Officer for Lunenburg County, was informed of the Francis children's failure to attend public school. Mr. Mullins called and spoke with Mr. Francis regarding the children's failure to attend school. (Trial Testimony of Bill Mullins)

7. On October 28, 1996, Mr. Francis wrote and mailed a letter to Mr. Mullins along with four affidavits signed by Mr. and Mrs. Francis regarding each of their four school-aged children, setting forth their religious beliefs concerning compulsory attendance in public schools. (Plaintiffs' Exhibit No. 1.)

8. Mr. Mullins wrote Mr. Francis by letter dated November 4, 1996 and advised Mr. Francis that Mr. Mullins had received the affidavits and that Dr. James E. Irons, the then Superintendent, would have the "final recommendation on home instruction." (Plaintiffs' Exhibit No. 2.)

9. By letter dated November 4, 1996, Mr. Mullins forwarded one of the affidavits he had received from Mr. Francis to Dr. James E. Irons. (Plaintiffs' Exhibit No. 3)

10. Mr. and Mrs. Francis wrote Helen Barnes, the then Chairman of the Lunen-

burg County School Board ("School Board"), a letter dated November 19, 1996. Enclosed with this letter was a statement of Mr. and Mrs. Jack Light attesting to the sincerity of the Francises' religious beliefs, an eight-page tract prepared by Christopher Klicka, an attorney with the Home School Legal Defense Association, a seven-page Memorandum of Religious Beliefs of the Francis Family signed by Mr. and Mrs. Francis, and a seven-page essay entitled "Render Unto Caesar." However, Ms. Barnes never received this letter. (Plaintiffs' Exhibit No. 4 and Trial Testimony of Helen Barnes)

11. Dr. Irons was in ill health during the previous events. He died in January 1997 of congestive heart failure. John Reavis became acting School Superintendent at this time. (Trial Testimony of Jane Wellons, School Board member)

12. Mr. Reavis wrote the Francises on February 3, 1997 (received on February 7, 1997) inviting and encouraging them to attend the School Board meeting scheduled for February 10, 1997, 'where the matter of their children's religious exemptions would be discussed. (Plaintiffs' Exhibit No. 7)

13. The Francises hand-delivered a letter to the Lunenburg County School Board on February 10, 1997, informing the Board that they would not be able to attend the meeting because of the short notice and because they were not able to contact their attorney, Mr. Klicka. (Plaintiffs' Exhibit No. 9)

14. The School Board informally discussed the Francises' petition for religious exemption at the February 10, 1997 meeting, and postponed the decision until the March 10, 1997 meeting. However, no official action was taken, and therefore there was no record of the informal discussion in the School Board minutes. (Trial Testimony of John Reavis)

15. Following the Board's notification from the Francises in the February 10, 1997 letter that the Francises were represented by a lawyer named Mr. Klicka, the Board's attorney, Leslie Osborn, wrote Mr. Klicka on February 13, 1997 informing him of the March 10, 1997 hearing date. (Plaintiffs' Exhibit 11 and Trial Testimony of Leslie Osborn)

16. Neither the Board nor its attorney notified the Francises of the March 10, 1997 hearing. Instead, the Board relied, as it had a right to because of the notification by the Francises of Mr. Klicka's representation, on its reasonable expectation that Mr. Klicka would inform the Francises. (Trial Testimony of Leslie Osborn)

17. Before the March 10, 1997 meeting, Mr. Klicka did not contact the Board, its counsel, or the Francises to inform them that he was not representing the Francises' interests, although an associate in his office may have left a message with Mr. Osborn's secretary. Neither Mr. Klicka nor anyone in his office notified the Board, its counsel, or the Francises by letter of the nonrepresentation. (Trial Testimony of Leslie Osborn and James Francis)

18. The Lunenburg County School Board met on March 10, 1997 and discussed the matter of the Francis family's religious exemption in executive session and sought the advice of its counsel, Mr. Osborn. The members of the School Board, by consensus, after considering the material submitted by the Francises in connection with their petition, denied it on ground that the information in support of the petition was insufficient for the Board to make an informed decision. The School Board recorded the minutes of their meeting, but failed to note in their minutes the denial of the exemption made after the executive session. (Plaintiffs' Exhibit No. 14)

19. At the March 10, 1997 meeting, the School Board received advice from its attorney, Mr. Osborn. This advice included the criteria for making a determination of religious exemption and the opinion that the Francises' application was incomplete. (Trial Testimony of Leslie Osborn)

20. At all times, while the Francises' petition for religious exemption was under

the consideration of the Lunenburg County School Board, it acted in good faith and on advice of counsel. (Testimony of the Lunenburg County School Board members and Leslie Osborn)

21. By letter of March 17, 1997, Mr. Reavis advised the Francises that their religious exemption request had been denied and they should plan to enroll their children in the Lunenburg County school system. (Plaintiffs' Exhibit No. 14)

22. On April 24, 1997, Mr. and Mrs. Francis then filed what they entitled a "Motion to Reconsider." This document stated in part: "The James Francis Family hereby requests that this board reconsider their alleged decision of March 17, 1997 or in the alternative please provide us with the following information:" The Francises then listed seven specific requests asking the School Board to explain why it denied the request. (Plaintiffs' Exhibit No. 15)

23. In response to the Francises' Motion to Reconsider, Mr. Osborn wrote a letter to the Francises dated April 28, 1997, which, in effect, denied the Motion to Reconsider and explained the Board's decision. (Plaintiffs' Exhibit No. 16)

24. On July 1, 1997, Carol R. Collins became Superintendent of Schools for Lunenburg County. (Trial Testimony of Carol Collins)

25. Following the assumption of her duties, Ms. Collins called the Francises and then wrote a letter dated August 21, 1997 inviting them to her office for a discussion. The letter further stated that until an exemption was granted, Ms. Collins would be obliged to enforce Virginia compulsory attendance laws. (Plaintiffs' Exhibit No. 17 and Trial Testimony of Carol Collins)

26. On August 27, 1997, the present action was initiated in United States District Court in Richmond, Virginia by the Francises, on behalf of themselves and their minor children. (Court Record)

27. On January 12, 1998, the action was dismissed by United States District Judge Robert R. Merhige, Jr. (Court Record)

28. On November 16, 1998, that dismissal was reversed by the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). The Fourth Circuit held that Counts Three and Seven were actionable. (Court Record)

29. Judge Robert R. Merhige, Jr. resigned from the bench at the end of July, 1998. (Court Record)

30. This case was reassigned to United States District Judge Richard L. Williams on November 20, 1998. (Court Record)

31. On April 8, 1999, the Court appointed a Guardian ad Litem to represent the best interests of the infant Francises. The Court also stayed the action and directed the Francises to resubmit the request for religious exemptions to the School Board. (Court Record)

32. On May 14, 1998, after the Francises' refusal to resubmit their request to the School Board, it was necessary for the Court to rescind its Order of April 8, 1999 and order the case set for trial. The Court also denied the pending motion to dismiss, dismissed Lunenburg County as a defendant, denied the motion for jury trial, and denied the motion to recuse. (Court Record)

33. At all times from September, 1996 until the trial date on September 22, 1999, the Francis children have enjoyed the benefits of home schooling. (Trial Testimony of Donna Francis). During that time, no action from the Lunenburg County School Board or any employees of the State or Lunenburg County has resulted in any punitive action being taken against the Francises, even though a formal exemption by the School Board was not issued until August, 1999. (Trial Testimony of John Reavis, Carol Collins, and Bill Mullins)

34. Notwithstanding the Court's failure to impose liability on the Defendants, it finds that the Guardian ad Litem rendered valuable services to her wards, the infant Francises, Mr. and Mrs. Francis, and Lu-

nenburg County by the Guardian's representation of the interests of the children. The Court therefore will assess joint and several liability for payment of the Guardian ad Litem's fees against the Plaintiffs and Defendants.

## II. CONCLUSIONS OF LAW

### A. Due Process

■ 1. The requirements of due process are satisfied if a party has been provided with reasonable notice and a reasonable opportunity to be heard to present his claim or defense with due regard to the nature of the proceeding and the character of the rights that may be affected by it. The practicalities of the case must be considered in determining whether these requirements are reasonably met. The requirement of due process notice under all circumstances must be calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must afford a reasonable time for those interested to make their appearance and a reasonable amount of time differs depending on the type of case. *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ 2. Due process applies in several situations, including administrative agency hearings, hearings of student suspension cases and teacher termination cases, which are analogous to a hearing for a religious exemption from compulsory school attendance. *See, e.g., Wilkinson v. School Board of the County of Henrico, et al.*, 566 F.Supp. 766 (E.D.Va.1983); *Hillman v. Elliott*, 436 F.Supp. 812 (W.D.Va.1977).

■ 3. " ... [T]he concept of due process depends upon fairness and reasonableness in light of the totality of the circumstances." *Hillman*, 436 F.Supp. at 816.

4. In some cases, such as the termination of teachers, "minimal due process [is] required ... adequate notice, a specification of the charges against her, an opportunity to confront the witnesses against her and an opportunity to be heard in her own defense." *Grimes v. Nottoway County School Board*, 462 F.2d 650, 653 (4th Cir.), *cert. denied*, 409 U.S. 1008, 93 S.Ct. 439, 34 L.Ed.2d 300 (1972) (citation omitted)

5. Virginia Code § 22.1–257(B)(2) [1] provided that: "A school board: shall excuse from attendance at school any pupil who, together with his parents, by reason of bona fide religious training or belief, is conscientiously opposed to attendance at school." Virginia Code § 22.1–254.1(B) states that "any parent who elects to provide home instruction in lieu of school attendance should annually notify the Division Superintendent in August of his intention to so instruct the child...." In this case, the Francises asked for a religious exemption, pursuant to § 22.1–257(B)(2), but also planned on home schooling their children. It is up to the School Board to determine whether the pupil meets the criteria so that an exemption should be granted. The Lunenburg County School Board did hold a hearing to determine whether or not the Francis children should be granted a religious exemption, and denied the exemption on March 10, 1997.

■ 6. Notice to the Francises by letter dated February 4, 1997 and received on February 7, 1997 was sufficient notice of the February 10, 1997 School Board meeting.

7. The Supreme Court has stated that, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Perry v. City of*

---

**1.** These sections of the Virginia Code were amended in 1999. Although, Virginia Code § 22.1–257 was repealed, Virginia Code § 22.1–254(B)(1) incorporates the language for religious exemption that was formerly in

§ 22.1–257(B)(2). Accordingly, the law is essentially the same. The Court's Conclusions of Law addresses the law specifically as it was at the time of the Francises' application for religious exemptions.

*Norfolk,* No. 98–2284, slip. op. at 11, 1999 WL 731100 (4th Cir. Sept. 20, 1999) (citing *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). In *Perry,* the Fourth Circuit affirmed a decision denying relief to a plaintiff who did not have notice of a hearing because of a misaddressed letter. *Perry* at 11. The Court held that where there is no evidence that the letter was intentionally misaddressed and it appears that the mistake was a result of simple negligence, then the plaintiff's due process claim fails. *Id.*

■ 8. Similarly, notice of the March 10, 1997 hearing to Mr. Klicka, the lawyer whom the Francises had asserted was representing them, constituted sufficient notice to meet the requirements of due process. There is no evidence that the School Board intentionally failed to notify the Francises of the March 10, 1997 meeting. Instead, the School Board informed the Francises' attorney (or who it reasonably thought was the Francises' attorney). Mr. Klicka should have passed this information on to the Francises, and he should have informed both the Francises and the School Board that he was not representing them. If the School Board made a mistake in not directly informing the Francises of the March 10, 1997 meeting, this mistake was nothing more than negligence. And, as the Supreme Court has made clear, "a state actor's negligence cannot work an unconstitutional deprivation of a citizen's liberty or property interests." *Id.*

## B. Conspiracy to Deprive Free Exercise of Religion

■ 1. To prove a conspiracy as described in 42 U.S.C. § 1985, plaintiffs must show these essential elements:

(1)[a] conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Buschi v. Kirven,* 775 F.2d 1240, 1257 (4th Cir.1985) (citations omitted). The Fourth Circuit, in affirming a grant of summary judgment against a plaintiff in a § 1985 claim, stated that "we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir.1995).

2. The plaintiffs have failed to produce evidence that the School Board conspired to deny the Francises their First Amendment religious rights. Instead, the evidence indicates a comedy of errors by well-intentioned people. In denying the religious exemption on March 10, 1997, the School Board relied in good faith on their attorney, Mr. Osborn's representation that the Francises' application was incomplete.

3. Additionally, the plaintiffs have suffered no real injury from these events. The Francis children have enjoyed the fruits of home schooling since September 1996 and the Francises' undertaking to get a religious exemption from sending their children to public schools has been achieved. Accordingly, the facts of this case fail to support a conspiracy by the School Board to deny the Francises their right to freely exercise their religious beliefs.

## C. Qualified Immunity

■ 1. In this case, the members of the Lunenburg County School Board did not violate any constitutional rights of the Francises. Even if this Court had concluded that the Francises' constitutional rights had been violated, the School Board members would have been subject to qualified immunity and would thus not be liable for monetary damages.

■ 2. Qualified immunity protects government officials in their individual capacities from suits for damages so long as the officials do not "violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In applying *Harlow,* the Fourth Circuit has stated that "[t]he linchpin of qualified immunity is objective reasonableness." *Cromer v. Brown,* 88 F.3d 1315, 1324 (4th Cir.1996) (quoting *Pinder v. Johnson,* 54 F.3d 1169, 1173 (4th Cir.) (en banc), *cert. denied,* 516 U.S. 994, 116 S.Ct. 530, 133 L.Ed.2d 436 (1996)). Ruling on a qualified immunity defense requires (1) identification of the specific right allegedly violated, (2) determining whether at the time of the alleged violation the right was clearly established, and (3) if so, determining whether a reasonable person in the official's position would have known that his acts violated such right. *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992).

■ 3. This immunity exists so that educators "must understand that action taken in good faith fulfillment of their responsibilities and within the bounds of reason under all circumstances will not be punished and that they need not exercise their discretion with undue timidity." *Wood v. Strickland,* 420 U.S. 308, 318, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ 4. Qualified immunity will not apply if the official knew or reasonably should have known that the action taken would violate the plaintiffs' constitutional rights or if the action was taken with malicious intention to deprive someone of constitutional rights or cause other injury. *Wood,* 420 U.S. 308, 95 S.Ct. 992. A school official's acts are judged by what a reasonably well-informed person would know and the contours of the right allegedly violated. The alleged violation "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

5. The Francises' right to any further procedural rights or notice in this matter is not clearly established. Additionally, the School Board acted reasonably and upon advice of counsel. The School Board

members and Superintendent did not act maliciously or with an intent to deprive the Francises of constitutional rights or cause other injury. Therefore, even if this Court had found a deprivation of constitutional rights, which it did not, the defendants would be protected by qualified immunity.

## III. CONCLUSION

1. Therefore, the Court FINDS against the plaintiffs, the Francises, and in favor of all defendants.

2. The Court DENIES each and every prayer for relief requested by the plaintiffs.

3. This case is hereby DISMISSED WITH PREJUDICE as to all defendants.

An appropriate Order shall issue.

### *FINAL ORDER*

This matter is before the Court for findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52. For reasons set forth in the accompanying Findings of Fact and Conclusions of Law, this matter is DISMISSED WITH PREJUDICE as to all defendants.

It is so ORDERED.

Let the Clerk send a copy of this Order and the accompanying Findings of Fact and Conclusions of Law to all counsel of record.