James R. DENNIS, Plaintiff,

v.

**COUNTY SCHOOL BOARD OF RAPPAHANNOCK COUNTY, et al., Defendants.**

Civ. A. No. 83–0021–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Feb. 28, 1984.

Roger A. Ritchie, Harrisonburg, Va., for plaintiff.

Douglas L. Guynn, Philip C. Stone, Harrisonburg, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The plaintiff, James R. Dennis, filed the above-referenced action on March 25, 1983, although he has since filed, with leave of court, an amended complaint. The suit was brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. The plaintiff is currently a resident of West Virginia, although at the time the complaint was originally filed he was a resident of the Commonwealth of Virginia. He had been employed for two years as a probationary teacher in the Rappahannock County school system in the Commonwealth of Virginia. The defendants include Robert Estabrook, Superintendent of the Rappahannock County Public Schools, and the individual members of the School Board of Rappahannock County. The defendants failed to renew the plaintiff's contract for his position as a probationary teacher in the Spring of 1982. This action forms the basis for this lawsuit.

The plaintiff's amended complaint contains two counts. First, he alleges that the substantial motivating factor in the defendants' decision not to renew his contract was retaliation for the plaintiff's exercise of his First Amendment rights. Second, the plaintiff alleges that the defendant School Board's written notice of the nonrenewal of his teaching contract was not received until after the April 15 deadline established in Va.Code § 22.1–304, thereby entitling the plaintiff to a probationary contract for the 1982–83 school year. In his prayer for relief, the plaintiff asks for back pay, reinstatement, compensatory and punitive damages, and attorney's fees.

On April 22, 1983, the defendants filed a motion to dismiss. On June 21, 1983, all parties appeared, by counsel, to argue the motion before the court. At the conclusion of the hearing, the court directed the parties to file further memoranda of law to support their positions, and the parties have complied with this request. Shortly after the plaintiff filed his amended complaint on November 9, 1983, the defendants responded with a second motion to dismiss, restating the same grounds raised in their previous motion. The issues are now ripe for disposition.

The defendants have raised three grounds to sustain their motion to dismiss: (1) with respect to the Second Count, the court lacks subject matter jurisdiction because the Count does not allege either diversity of citizenship or federal question jurisdiction; (2) again with respect to the Second Count, the written notice of nonrenewal given by the Superintendent of Schools prior to the April 15 deadline met the requirements of Va.Code § 22.1–304; and (3) the complaint as a whole fails to

state a claim upon which relief can be granted. The court will consider each ground separately below.

## I. *Subject Matter Jurisdiction*

■ The defendants urge the court to dismiss the Second Count because it alleges neither diversity of citizenship under 28 U.S.C. § 1332 nor a federal question under 28 U.S.C. § 1331. The plaintiff has asked the court to exercise its pendent jurisdiction over the claim. Ever since the Supreme Court decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it has been clear that as a matter of Constitutional power, a federal district court may exercise pendent jurisdiction over non-federal claims whenever those claims are asserted with federal claims in a single action. However, both the federal and non-federal claims must "derive from a common nucleus of operative fact" and be so related that ordinarily the plaintiff "would be expected to try them all in one judicial proceeding". *Id.* at 725, 86 S.Ct. at 1138. *Gibbs* stresses that a federal district court ought to exercise its discretion sparingly, based on considerations of "judicial economy, convenience, and fairness to litigants," avoiding needless decisions based on state law. *Id.* at 726, 86 S.Ct. at 1139.

■ This court has no difficulty in concluding that it has the Constitutional power to decide the plaintiff's Second Count. Furthermore, looking at the factors to be considered in exercising its discretion, the court believes it is certainly economical and convenient to all parties to rule upon the issues raised in the Second Count, rather than dismissing them without prejudice only to have the claim refiled in state court. The court recognizes that the necessity of construing the statutory scheme embodied in Va.Code §§ 22.1–304 and 22.1–305 without any direct guidance from Virginia courts makes the resolution of the questions somewhat more difficult. Nevertheless, in light of all the other factors, the court finds it proper to exercise its pendent jurisdiction over the plaintiff's Second Count.

## II. *Virginia Code §§ 22.1–304 and 22.1–305*

■ In Title 22.1, Chapter 15 of the Virginia Code, the Virginia General Assembly has enacted a statutory scheme covering, *inter alia*, the hiring, dismissal, and suspension of teachers in the public school systems of the Commonwealth of Virginia. In particular, §§ 22.1–304 and 22.1–305 mandate certain procedures to be followed by school superintendents and local boards of education in order to effectuate the renewal or nonrenewal of a teaching contract of a probationary teacher. A probationary teacher is one who has not achieved "continuing contract status", i.e., one who has not taught for three years in the same school division, thereby entitling that teacher to a form of tenure within that school division. Teachers who have continuing contract status may be dismissed only for cause, *see* § 307, or because enrollments have decreased or particular subjects have been abolished from the school curriculum, *see* § 304. A probationary teacher, on the other hand, may be dismissed without cause simply by not renewing his contract for the coming school year. However, such a nonrenewal must be done in accordance with the procedures mandated in §§ 304 and 305.

§ 304 states in pertinent part

§ 22.1–304. *Reemployment of teacher who has not achieved continuing contract status; ....*—If a teacher who has not achieved continuing contract status receives notice of reemployment, he must accept or reject in writing within fifteen days of receipt of such notice. Except as provided in § 22.1–305, written notice of nonrenewal of the contract must be given by the school board on or before April fifteenth of each year. If no such notice is given a teacher by April fifteenth, the teacher shall be entitled to a contract for the ensuing year in accordance with local salary stipulations including increments.

§ 305 states in pertinent part

§ 22.1–305. *Nonrenewal of contract of probationary teacher.*—A. Before a division superintendent recommends to the school board nonrenewal of the contract of a teacher who has not achieved continuing contract status, the division superintendent shall notify the teacher of the proposed recommendation. Upon written request of the teacher within five working days after receipt of such notice, the division superintendent or his designee shall orally provide the specific reasons, if any, for such recommendation, along with supporting documentation, if any, to the teacher and, if requested by the teacher, to his or her representative. Within ten days after receiving such reasons, the teacher may request, by notification in writing to the division superintendent, a conference before the division superintendent. Upon such request, the division superintendent shall set a date for the conference, which shall be within thirty days of the request, and shall give the teacher at least fifteen days' notice of the time and place of the conference.

. . . .

E. In any case in which a teacher requests a conference as provided in this section, written notice of nonrenewal of the contract by the school board must be given within thirty days after the division superintendent notifies the teacher of his intention with respect to the recommendation and the provisions of § 22.-01–304 requiring such notice on or before April fifteenth shall not be applicable.

. . . .

H. The intent of this section is to provide an opportunity for a probationary teacher to discuss the reasons for nonrenewal with the division superintendent or his designee, and the provisions of this section are meant to be procedural only. Nothing contained herein shall be taken to require cause as defined in § 22.1–307 for the nonrenewal of the contract of a teacher who has not achieved continuing contract status nor shall the failure of the school board or the division superintendent to comply with any time requirement herein constitute a basis for continued employment of the teacher.

In the Second Count of his amended complaint, the plaintiff alleges the following facts. On April 13, 1982, the plaintiff, then in his second year as a probationary teacher, received a hand-delivered letter from the division superintendent, Mr. Estabrook. The letter advised the plaintiff that the superintendent would recommend to the Rappahannock County School Board at its meeting scheduled for that day that the plaintiff's contract not be renewed for a third year. At the time plaintiff received the letter, he requested the reasons for the recommendation, whereupon the superintendent responded that he was making the recommendation because he believed the plaintiff was immature. The School Board failed to take any action on the superintendent's recommendation at its April 13, 1982, meeting. On April 15, 1982, the plaintiff wrote a letter to the superintendent requesting supporting documentation, if there was any, for his recommendation. The superintendent replied by letter dated April 20, 1982, that he had not relied on any documentation in making his recommendation of nonrenewal. On April 21, 1982, the plaintiff by letter advised the superintendent that since he had not received notice of nonrenewal, he no longer needed the information he had previously requested. In addition, the plaintiff expressed his intention to return to the Rappahannock School System as a teacher for the 1982–83 school year. By letter dated April 28, 1982, the superintendent informed the plaintiff that he would not be re-employed for the 1982–83 school year. Finally, on May 12, 1982, the plaintiff received a letter from Gerald S. Lysik, the Clerk of the Rappahannock County School Board, informing the plaintiff that the School Board had voted not to renew his contract at its meeting on May 11, 1982. Based on these facts, the plaintiff alleges that he was entitled to a third year probationary contract for the 1982–83 school year under

§ 304, *supra.* It is this claim which the defendants have moved to dismiss.

■ The defendants have asserted, both in their brief and in oral argument, that the superintendent's letter to the plaintiff, hand-delivered on April 13, 1982, advising him that the superintendent would recommend that the plaintiff's contract not be renewed, was in substance all the law required effectively to terminate the plaintiff's employment relationship with the Rappahannock County School Division. Specifically, the defendants contend that the requirement in § 304 that "written notice of nonrenewal of the contract must be given *by the school board* on or before April fifteenth" (emphasis added) was met by the superintendent's hand-delivered letter on April 13, 1982. To read that passage to require actual written notice from the school board, the defendants argue, both disregards the superintendent's positive recommendation as a condition precedent to contract renewal under Va.Code § 22.1–295, and elevates form over substance, contrary to the intent of the legislature. Finally, the defendants insist that if §§ 304 and 305, *supra,* are given the construction urged by the plaintiff, then the statutes are unconstitutional under Article VIII of the Virginia Constitution. The court finds all of these arguments unpersuasive. Under the facts alleged by the plaintiff, he has a valid cause of action against the defendants for breach of contract.

■ The courts of Virginia apply well-settled rules of statutory construction. This court, hearing this matter under its pendent jurisdiction to hear state law claims, must apply Virginia law. Virginia clings tenaciously to the proposition that "when a statute is clear and unequivocal, general rules for the construction of statutes of doubtful meaning have no application.... The province of construction lies wholly within the domain of ambiguity." *School Board v. School Board,* 219 Va. 244, 247 S.E.2d 380, 384 (1978) (citations omitted). The court believes §§ 304 and 305 are clear and unequivocal. § 305 requires a division superintendent who intends to recommend nonrenewal of a probationary teacher first to inform the teacher of the proposed recommendation. That section then permits the teacher to request a conference with the superintendent to discuss the proposed recommendation. If the teacher requests the conference provided for in § 305, the provisions of § 304 requiring notice of nonrenewal of the contract by April fifteenth are not applicable. However, if the teacher does not request the conference provided for by § 305, the operation of § 304 is triggered. § 304 mandates that the school board *must* give written notice of nonrenewal of the contract to the teacher on or before April fifteenth, and "[i]f no such notice is given a teacher by April fifteenth, the teacher shall be entitled to a contract for the ensuing year...." The statutory scheme could not be clearer. §§ 304 and 305 do not contradict one another, or lead to any ambiguity; rather, they complement one another in a rational, coherent, and orderly manner.

Nevertheless, the defendants insist that §§ 304 and 305 must not be read in isolation, but must be read as a part of the Act, or at least that Article of the Code of Virginia entitled "Terms of Employment Generally," Va.Code §§ 22.1–293 through 22.1–305. Even when the court looks beyond the plain meaning of the words of §§ 304 and 305, it nevertheless finds, under well-settled principles of statutory construction, that the legislature's intent is consistent with the plain meaning of §§ 304 and 305.

The defendants argue that implicit in §§ 304 and 305 is the principle that a superintendent's positive recommendation is a condition precedent to the renewal of a probationary teacher's contract. The defendants find support for this principle in Va.Code §§ 22.1–295:

> *Employment of teachers.*—The teachers in the public schools of a school division shall be employed and placed in appropriate schools by the school board upon recommendation of the division superintendent.

The defendants suggest that under this provision the School Board is unable to hire anyone in a teaching position without the superintendent's positive recommendation, and that consequently, once the plaintiff had been made aware that he was not going to receive the superintendent's recommendation, he was no longer entitled to the statutory notice which § 304 mandates the School Board provide by April 15. In other words, the defendants claim that notice of the superintendent's intention to recommend nonrenewal is the legal equivalent of actual notice from the School Board itself of nonrenewal. If the court were to give effect to this view of the interrelationship of these statutes, it would render § 304 meaningless. Such an interpretation would do serious violence to the principles of statutory construction.

■ "A statute should be construed, where possible, with a view toward harmonizing it with other statutes." *Blue v. Virginia State Bar, etc.,* 222 Va. 357, 282 S.E.2d 6, 8 (1981). "If apparently conflicting statutes can be harmonized and effect given to both of them, they will be so construed." *Board of Supervisors v. Marshall,* 215 Va. 756, 214 S.E.2d 146, 150 (1975). However, "when one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails." *Virginia National Bank v. Harris,* 220 Va. 336, 257 S.E.2d 867, 870 (1979). Va. Code § 22.1–295, empowering the school board to employ teachers, is a statute of ancient origin. At least as early as 1924, the Commonwealth of Virginia had similar statutory language.[1] The relevant portions of § 304 are, by contrast, only of recent enactment. It was not until 1978 that the General Assembly added the following sentence to § 304:

If no such notice is given a teacher by April fifteenth the teacher shall be entitled to a contract for the ensuing year in accordance with local salary stipulations including increments.

The court would have to find that if the two statutes are irreconcilable, § 304, the latter enactment, prevails over § 295, the former.

However, there is no reason to find the two statutes in conflict, for they can easily be harmonized with one another. The plaintiff suggests that § 295 deals only with initial hirings (the statute used the word "employed") whereas §§ 304 and 305 deal with rehirings (the statute here uses the term re-employment" and "renewal"). Moreover, the court is inclined to believe that the defendants' interpretation of § 295 stretches the importance of the superintendent's recommendation out of proportion. What that statute appears to contemplate for the superintendent is a role in the screening of all applicants to ensure that everyone considered by the school board possesses suitable qualifications and moral character. The superintendent has no power to hire or fire. As Va.Code § 22.1–313 makes clear, "[t]he school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals, suspensions and placing on probation."

The defendants have urged the court to consider *Gaines v. Board of Education,* 554 S.W.2d 394 (Ky.App.1977) and *Bonar v. City of Boston,* 369 Mass. 579, 341 N.E.2d 684 (1976), for the proposition that, under similar statutory schemes, a superintendent's timely notice of intention to recommend nonrenewal is legally sufficient to meet any separate requirement of notice from the school board itself. Both of these cases are distinguishable from the instant suit. In *Gaines,* the aggrieved plaintiffs actually received notice of nonrenewal, albeit from the superintendent, whereas plaintiff Dennis merely received notice of the superintendent's intention to recom-

1. The county school board shall employ teachers and place them in appropriate schools on recommendation of the division superintendent, and shall dismiss teachers when delinquent, inefficient, or otherwise unworthy.
Code of Virginia, title 11, chapter 33, § 664r (1924).

mend nonrenewal. Furthermore, the *Gaines* decision, *supra*, implies that the superintendent acted both in behalf of, and as agent for, the defendants school board. 554 S.W.2d at 395. The Virginia authorities suggest that a superintendent is not an agent for a member of the school board, nor can he enter into or terminate contracts in areas normally reserved to the school board. *See Legg v. County School Board*, 157 Va. 295, 160 S.E. 60 (1931). Similarly, in *Bonar*, *supra*, the superintendent of schools was the executive officer of the school committee in all matters pertaining to the powers and duties of the school committee. 341 N.E.2d 686. It is apparent that Virginia's statutory scheme does not grant its division superintendents this broad authority.

In conclusion, the court rejects the defendants' argument that the division superintendent's notice of his intention to recommend the plaintiff's teaching contract not be renewed, hand-delivered to the plaintiff on April 13, 1982, was legally equivalent to the requirement in § 304 that the school board give the plaintiff written notice of nonrenewal of the contract on or before April 15. The statutory language is clear and unambiguous: where § 305 imposes specific duties upon the division superintendent, § 304 imposes specific duties upon the school board. The school board's failure to comply with the clear, unequivocal, and unambiguous language of § 304 means that "the teacher shall be entitled to a contract for the ensuing year in accordance with local salary stipulations including increments". This is not an exaltation of form over substance. §§ 304 and 305, and their precursors [2] were enacted to give public school teachers in Virginia a certain amount of employment security, particularly against the hardship of last-minute nonrenewal. This 1978 amendment to § 304, discussed *infra*, makes clear the legislature's intent to create a contract where notice of nonrenewal is not given by the April 15 deadline. Application of this section of the law is not form over substance; rather it represents strict adherence to the substance of the law.

It is now proper to turn to the other arguments advanced by the defendants. They argue that paragraph H of § 305 expressly prohibits the relief sought by the plaintiff. Paragraph H reads

H. The intent of this section is to provide an opportunity for a probationary teacher to discuss the reasons for nonrenewal with the division superintendent or his designee, and the provisions of this section are meant to be procedural only. Nothing contained herein shall be taken to require cause as defined in § 22.1–307 for the nonrenewal of the contract of a teacher who has not achieved continuing contract status nor shall the failure of the school board or the division superintendent to comply with any time requirement herein constitute a basis for continued employment of the teacher.

The defendant would have the court read this paragraph to apply to § 304, even though by its explicit terms, it is applicable only when a probationary teacher invokes the right to a conference spelled out in § 305. This is evident by the use of the phrases "[t]he intent of this section," "the provisions of this section," "[n]othing contained herein" and "any time requirement herein," in the language of the paragraph itself. For these reasons, the court cannot find that the above-quoted statutory language, plainly applicable to § 305, is equally applicable to § 304. Certainly, it is not so applicable by its language, nor can the court discern any inferential basis requiring, or even permitting, such an application to § 304.

■ Finally, the defendants contend that if §§ 304 and 305 are to be interpreted in the manner suggested by the defendants, then those sections violate Article VIII § 7 of the Virginia Constitution, which provides "[t]he supervision of schools in each school division shall be vested in a school board...." The defendants reason that the management of a school board's teach-

---

2. See Va.Code §§ 22–217.1 through 217.8 (1968 edition).

ing staff is an essential function of a school board's supervision, and §§ 304 and 305 emasculate the school board's prerogatives by forcing upon the board a teacher it does not want. The defendants cite *School Board v. Parham*, 218 Va. 950, 243 S.E.2d 468 (1978), as authority for this proposition. The court does not agree that §§ 304 and 305 are unconstitutional under the Virginia Constitution.

Article VIII of the Constitution of Virginia (1971) concerns educational matters. It apportions various responsibilities for the creation and maintenance of Virginia's system of public education among the General Assembly, the State Board of Education, and the local school boards. Whereas § 7 vests in the local school boards the responsibilities for day-to-day supervision of the local school systems, § 1 vests broader, statewide responsibilities in the General Assembly.

*Public schools of high quality to be maintained.*—The General Assembly shall provide for a system of free public elementary and secondary schools for all children of school age throughout the Commonwealth, and shall seek to ensure that an educational program of high quality is established and continually maintained.

The constitutional scheme with respect to educational matters in Virginia contemplates the role of the General Assembly as formulating policies which will maintain an efficient, high quality, statewide educational system. The local school boards, on the other hand, have full responsibility for the application of statewide and local policies, rules, and regulations adopted for the day-to-day management of the public schools. There is no suggestion that these supervisory powers are infringed upon by the statewide establishment of minimum salary scales, teacher certification requirements, a minimum number of days in the school year, mandatory grievance procedures, and the like. Similarly, the creation of a statewide system of tenure is properly within the ambit of authority assigned under the Constitution to the General Assembly. The court finds that Va.Code §§ 22.1–304 and 22.1–305 are valid under the powers granted to the General Assembly through Article VIII, § 1 of the Constitution of Virginia.

III. *Claims Upon Which Relief Can Be Granted*

■ The defendants' final ground for dismissal asserts that the plaintiff has failed to state a claim upon which relief can be granted. This assertion is without merit as to the Second Count in light of the foregoing analysis. As to the First Count, the plaintiff claims that the defendants acted under the color of state law to punish the plaintiff for the exercise of his First Amendment right to freedom of speech. While it is unnecessary at this point to rule upon the law in this area, it is clear that under the authority of cases like *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), the plaintiff has stated a cognizable claim which, should he prevail, would entitle him to relief.

By way of summary, the court will deny the defendants' motion to dismiss. While it is perhaps unnecessary to state the obvious, the court stresses that, for analytical purposes, it has assumed the truth of the plaintiff's factual allegations. In order to prevail on either count, the plaintiff must still meet his burden of proving the facts to be as he has alleged them.

An appropriate Order will this day issue.