Diana G. CORNS, Plaintiff,

v.

SCHOOL BOARD OF RUSSELL COUNTY, VIRGINIA, et al., Defendants.

Civ. A. No. 92–0179–A.

United States District Court, W.D. Virginia, Abingdon Division.

Oct. 25, 1993.

Mark R. Graham, Abingdon, VA, for plaintiff.

Scott S. Cairns, Richmond, VA, for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This matter is before the Court on plaintiff's motion for summary judgment and defendants' cross-motion for partial summary judgment. Plaintiff's First Amendment claim is not now before the Court. On June 2, 1993 this Court denied defendants' motion to dismiss for failure to state a claim on which relief could be granted. Since that time little has been added to the record in

this case and the Court is unpersuaded that the reasoning which pervaded its earlier opinion should not serve as the basis for resolving the motions presently before it. For this reason and the reasons explained below, this Court denies defendant's motion for partial summary judgment and grants plaintiff's motion for summary judgment.

## FACTS

Plaintiff, Diana G. Corns ("Corns") worked as a librarian for the defendant, School Board of Russell County, Virginia ("the Board"). Corns signed a contract for 1985–1986 to serve as a librarian at a county high school, but during that year she suffered an on-the-job injury that required her to miss several days of work. Corns made up the lost time by working during the summer months.

Corns and the Board signed another contract for her employment for 1986–1987. Corns worked for most of the year, but then, in April of 1987, she experienced a recurrence of her disability and took the rest of the year off as sick leave.

For the school year 1987–1988, Corns and the Board again signed a contract for plaintiff's employment as a librarian within the county school system. In September, however, Corns' symptoms recurred requiring her to take a leave of absence for the remainder of the school year, through the sick leave plan.

In the summer of 1988, plaintiff signed a contract with the Board for the 1988–1989 school year which included a condition of one year's probation. However, before the summer was over, Corns again experienced physical problems due to her injury. She requested, and the school board granted, her sick leave for the 1988–1989 school year.

In April 1989, Corns, with the school board's permission, participated in a "hardening" program to aid her recovery and to permit her employment during the following school year. Corns then inquired about a position for the coming school year, and was told to sign an employment intent form. The intent form, which she alleged she had never seen before, stated that the deadline for expressing interest in positions for the 1989–1990 school year was February 17, 1989. Plaintiff submitted the completed form with a letter confirming her interest (and her lack of notice of the early deadline) and expressed confidence that her participation in the hardening program had provided the school board with notice of her interest in employment for the following year.

The school board did not respond to Corns' intent form and failed to inform her that they did not intend to renew her contract. Just before the 1989–1990 school year was to start, Corns wrote to the Board and again expressed her interest in a position as a teacher or a librarian. (Corns' physician had granted her permission to work.) The school board responded by stating that no positions were available for her.

In March 1990, Corns again wrote to the school board, expressing interest in a position for 1990–1991. The school board did not respond until October of 1990, at which time Corns signed a contract for the 1990–1991 school year with the Board to serve as librarian at an elementary school. The contract specified that plaintiff was required to serve a three-year probationary period before obtaining continuing contract status.

Corns signed another contract for the 1991–1992 school year and worked the full year. In March of 1992, the school board notified Corns that her contract would not be renewed for the following year. As a result, Corns brings this suit, alleging that her dismissal violated her right to due process under the Fourteenth Amendment.

For the reasons stated herein, this Court finds that plaintiff did have a property interest, due to her achievement of continuing contract status under Virginia law, and that her due process rights were violated.

## ANALYSIS

A party seeking summary judgment has the initial burden of coming forward and identifying which "pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any," demonstrate that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c);

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this initial burden is satisfied, the non-moving party must "go beyond the pleadings" and demonstrate the specific facts that show "there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. If, upon evidence presented to the court, there is no genuine issue of material fact in dispute, the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Here, both the plaintiff and the defendant have asked the Court to grant them summary judgment.

This case, while ripe for summary judgment, is made difficult by the dearth of law on the subject. The Virginia Courts and the Virginia General Assembly have only tangentially addressed the issue before the Court today. It appears that this issue is a matter of first impression in Virginia and this Court does not undertake to resolve undecided questions of state law lightly.

### A. Continuing Contract Status

Virginia accords a degree of protection to teachers through a form of tenure known as "continuing contract status." Va.Code Ann. §§ 22.1–303 to –306 (1985). Once a teacher has achieved continuing contract status, he or she may not be dismissed without cause. *Id.* § 22.1–304, –307.[1] Every candidate for continuing contract status must fulfill a period of probation. Virginia Code Section 22.1–303 states in relevant part: "[a] probationary term of service for three years in the same school division shall be required before a teacher is issued a continuing contract." Upon completion of the third probationary year and the signing of a fourth contract, the teacher gains continuing contract status. *Id.* § 22.1–304 ("[t]eachers employed after completing the probationary period *shall* be entitled to continuing contract status.") (emphasis added).

■ The question in this case boils down to what constitutes "service" sufficient to satisfy the probationary term in § 22.1–303. The statute itself appears to offer some guidance in this area. In the concluding paragraph § 22.1–303 requires "at least 160 contractual teaching days ... in the first year of service by the teacher."[2] This indicates that the teacher must sign a contract for at least 160 days[3] before such teacher is eligible to start the clock running on the three year probationary period. This paragraph is also distinguished by the notable absence of any emphasis on "service" days as opposed to the clear emphasis on "contractual" days.

This emphasis comports with a common sense approach to the statute. Employing defendant's logic, a teacher who did not work the full 160 days of the contract would be ineligible to count the year in computing probationary service. At argument on this motion, the defendant was unable to provide any criteria for determining how many days a teacher would be allowed to miss before the probationary year would be forfeit. This incongruous result cannot be what the Virgi-

---

1. Librarians are included in the definition of "teacher" for the purposes of these statutes. *Regulations of the Virginia Board of Education, Regulations Governing Contractual Agreements with Professional Personnel* § 1.1 (1993). All of the Regulations of the Virginia Board of Education cited in this Opinion were effective in 1980 (the time frame relevant to this case).

2. Section 22.1–303 was amended by the Virginia Legislature in 1989 to include: "[f]or the purposes of calculating the three years of service required to attain continuing contract status, at least 160 *contractual* teaching days during the school year shall be deemed the equivalent of one year in the first year of service by a teacher" (emphasis added).

   This Court is loathe to interpret the word "service" in the pre–1989 version of § 22.1–303 in light of the recent amendment. However, it is important that in 1989, the Virginia Legislature clearly intended to define "employment" as mentioned in the Board of Education regulations as contractual, and not actual, employment. Although it is difficult to know for certain whether the Legislature was clarifying § 22.1–303 or changing its application, this Court assumes that the Legislature intended the former consequence.

3. This 160 day period varies from the normal school period of 180 teaching days. This variance is due to the occasional late hiring of new teachers during their first contractual year. The 160 day contract prevents new teachers from being penalized for being hired after the school year has begun. This difference plays no material part in the Court's decision.

nia General Assembly intended.[4] This draconian result is easily and logically avoided by reading the statute as requiring a "contractual year" and not an actual "service" year.[5] This Court holds that the "probationary period" described in Virginia Code section 22.1–303 is met when three years of contractual employment have been met.

■ Defendants argue that the legislature neither intended nor contemplated that a person could "serve" their probation by using sick leave. However, the school board made the decision to grant Corns sick leave each time. The Board continued to renew her contracts even after two years during which Corns was almost constantly on a leave of absence. Although plaintiff's situation is unusual, in that her sick leave absences extended for the entire year, sick leave must necessarily be included in the term "employment." The teacher is still considered to be regularly employed full-time under the sick plan.[6]

As a corollary matter, this Court finds it necessary to address the impact of the school board's failure to notify Corns that the Board would not renew her contract for the 1989–1990 school year. Corns alleged that she did not receive notice of the decision by the Board not to rehire her by April 15, as required by statute, and no evidence to the contrary has been presented by the Board. Virginia Code § 22.1–304, indicates the importance of notification of nonrenewal:

> [w]ritten notice of nonrenewal of the contract must be given by the school board on or before April fifteenth of each year. *If no such notice is given* by April fifteenth, *the teacher shall be entitled to a contract for the ensuing year* in accordance with local salary stipulations including increments.[7]

Va.Code Ann. § 22.1–304 (1985) (emphasis added).

■ This statute is plain in its command that failure to give notification automatically results in the awarding of a contact for the following school year. *Dennis v. County Sch. Brd. of Rappahannock Co.*, 582 F.Supp. 536, 542 (W.D.Va.1984). This default contract is as valid as if the two parties had executed written copies of the document.[8]

■ In the present case, Corns did not receive notification of nonrenewal by the Board and accordingly she was a contractual employee for the 1989–1990 school year. This contract is significant for two reasons.

---

4. Such a law would give the School systems virtually unfettered authority to determine whether or not a teacher had "taught enough" to satisfy the probationary year. Given the extent to which the General Assembly has legislated in this area, such broad discretion is improbable.

5. Compare N.C.Gen.Stat. § 115c–325 (1991); "A year for purposes of computing time as a probationary teacher, shall be not less than 120 *workdays performed* as a full-time, permanent teacher in a normal school year."

6. Interestingly, the Virginia Board of Education Regulations, Sick Leave Plan for Teachers Part V states that "[a] teacher will be presumed to have left the teaching profession if he or she ... is unable to teach in the public schools of Virginia for a period of three consecutive years because of illness or disability...."
   There is additional language in the Board of Education's Regulations Governing Contractual Agreements with Professional Personnel that supports Plaintiff's position. Section 1.2(E) states that "[i]f a teacher ... separates from service during his or her probationary period and does not return to service in the same school division by the beginning of the year following the year of separation, such person shall be re-

quired to begin a new probationary period." Plaintiff cannot be said to have "separated" from her employment, because she was on a leave of absence approved by the School Board. The Sick Leave Plan for Teachers provides that "[s]chool boards may, by resolution, permit teachers to anticipate sick leave earnings for the current school year, provided adequate provision is made for a refund in the event the teacher terminates employment before such credit is earned."

7. This provision is applied to "continuing contract" teachers in the next paragraph. The end result of § 22.1–304 is that all teachers must be given notice of nonrenewal before April fifteenth or their contract is automatically renewed. As a result of this general application, it is of no import whether plaintiff had achieved continuing contract status or not, prior to the 1989–1990 school year.

8. It should be noted that the contract is the only remedy available to the plaintiff. She is not entitled to back pay or damages for the "default contract" year, as § 22.1–304 limits recovery by its terms. *School Bd. of City of Norfolk v. Giannoutsos*, 238 Va. 144, 380 S.E.2d 647 (1989).

The primary impact of this default contract was that it resulted in Corns being continually under contract with the Board from 1985 through 1992. The second result of the default contract was that, even if continuing contract status had not been achieved, the probationary language contained in the 1988–1989 contract would be satisfied, *see infra,* resulting in Corns attaining continuing contract status. Following either result, Corns served the requisite three probationary years and had achieved continuing contract status.

### B. *Tacking*

In looking at Corns' entire employment record with the Russell County School System, it is clear that she signed four contracts between 1985 and 1989 and worked the majority of two years, 1985 to 1987. The 1989–1990 default contract then occurred, *see supra,* followed by two years of work, 1990 to 1992. Between 1985 and 1992, the plaintiff obtained seven yearly contracts and worked four years, with two years of medical leave and one default year where no work was performed.

The plaintiff argues that the period from 1985 through 1987 and the period from 1990 through 1992 can be tacked together to obtain the necessary three year probationary period. Defendant responds that this concept is clearly negated by the wording of the Regulations Governing Contractual Agreements with Professional Personnel § 1.2(E) which states "[i]f a teacher, principal, or supervisor separates from service during his or her probationary period and does not return to service in the same school division by the beginning of the year following the year of separation, such person shall be required to begin a new probationary period." Defendants' reliance on this regulation adds little to their position.

When Corns signed or was awarded contracts from 1985 to 1992, she was continually in the service of the defendants. Section 1.2(E) does not apply to the present situation because there was no "separation from service." The only possible separation from service which could have occurred was during the 1989–1990 school year when the plaintiff obtained the default contract. Assuming arguendo, that Corns was separated from service during the 1989–1990 school year, she nonetheless returned to service in the same school system by the beginning of the next school year as required by the regulation. Therefore even if there was a separation, it did not require the probationary period to begin anew.

Defendant counters that the school board would be unable to properly evaluate teachers if the Court allowed the tacking together of separate time periods.[9] The Board's fears are unfounded in light of the regulations that currently exist.[10] In Corns' case there was no break in service and the defendant had ample opportunity to observe and evaluate the plaintiff. In addition to the seven years of contractual service, the plaintiff worked four years for the Board. By tacking the 1985 to 1987 period and the 1990 to 1992 period together, the plaintiff worked four years, one more year than required by § 22.1–303.

Defendant, at oral argument, claimed that over such an "extended period" of time, personnel and teaching methods will have changed and the goal of proper evaluation will be thwarted. This argument is unconvincing, considering that personnel and teaching method changes could just as easily occur during three "consecutive" years as they could during an "extended period." The Court rejects the defendant's argument and holds that plaintiff satisfied the three year probationary period of § 22.1–303 by

---

**9.** Defendant claims that the Court's holding will allow "a teacher to work any three years he or she pleases, over any period of time, and still be entitled to a continuing contract." *Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgement 9.*

**10.** Section 1.2(E) would prevent the tacking of separate time periods if they were separated by

more that the one year allowed by the regulation. "[i]f a teacher, principal, or supervisor separates from service during his or her probationary period and does not return to service in the same school division by the beginning of the *year following the year of separation,* such person shall be required to begin a new probationary period." (emphasis added).

tacking the periods from 1985 to 1987 and 1990 to 1992 together.

## C. *Added Probationary Period*

In the 1988–1989 contract, the Board included a condition of one year of probation. The inclusion of this condition implicitly indicates that the school board was aware that the 1987–1988 school year was to be Corns' third year, and that granting her a contract at the end of that year for the following year would have extended continuing contract status to her. To avoid this result, the Boards added a year to Corns' probationary term.

■ The Boards' inclusion of an additional probationary term in the 1988–1989 contract is contrary to the requirements of the Virginia Code, which states that "[t]eachers employed after completing *the* probationary period *shall* be entitled to continuing contract status." Va.Code Ann. § 22.1–304 (1985) (emphasis added). The Code's reference to "the" probationary period indicates that a teacher who completes the three-year probationary term set forth in Virginia Code Section 22.1–303 *must* receive continuing contract status upon signing the fourth contract. *See* 1983 Rep.Va.Att'y Gen. 442. A school board that does not want to extend a teacher continuing contract status in this fashion may simply refuse to renew the teacher's contract. *Dennis v. County School Board,* 582 F.Supp. 536, 538 (W.D.Va.1984). Defendants argue that Corns' additional one-year probationary period was interrupted by the lack of a contract between the parties for the 1989–1990 school year. However, whether or not the Board's addition of an extra probationary year was legitimate, the fact remains that there was no break in Corns' service, due to the default contract.

In the 1990–1991 contract, the Board included the following special covenant: "you will be required to serve a three (3) year probationary period before Continuing Contract will be issued." The Court finds that this additional probationary period could not be required of plaintiff. She had completed the three years of contractual employment, and she had (by default) completed an additional year of contractual employment, thus fulfilling all probationary terms required of

her. The circumstances presented by the condition of three years of probation in the 1990–1991 contract are identical to the circumstances surrounding the one year of probation included in the 1988–1989 contract. To state that an additional three-year probationary term could be required at this juncture would mean that a school board could indefinitely deny continuing contract status to a teacher by adding on probationary terms.

■ The Virginia Code states that "[t]eachers employed after completing the probationary period *shall* be entitled to continuing contracts during good behavior and competent service...." Va.Code Ann. § 22.1–304 (1985) (emphasis added). The term "shall" is mandatory. Once Corns was employed by the school board for the required probationary period, she was accorded the protection of continuing contract status by Virginia law. And once a teacher has attained continuing contract status, that teacher has a property interest in his or her position, and is entitled to all due process of law. *Wilkinson v. School Board,* 566 F.Supp. 766, 769 (E.D.Va.1983).

■ Accordingly, when the Board summarily discharged Corns without a hearing as required by Virginia Code § 22.1–306 *et seq.,* it denied her the very due process rights to which her continuing contract status entitled her.

## CONCLUSION

This Court concludes that for the reasons enumerated above, Corns achieved continuing contract status and accordingly, had a property interest in her position. Defendant's nonrenewal of her contract without meeting the procedural due process requirements was a violation of Corns' Fourteenth Amendment rights. As there are no material facts in dispute, this Court grants plaintiff's motion for summary judgment and denies defendant's cross-motion for partial summary judgment.

## ORDER

In accordance with the Memorandum Opinion issued today in this matter, Defen-

dant's motion for partial summary judgment is hereby DENIED and Plaintiff's motion for summary judgment is hereby GRANTED.

This Court further orders that Diana Corns be:

1. Reinstated in her position as a librarian with the Russell County School system.

2. Awarded back-pay and benefits from the end of the 1992 school year to the present time.

3. Awarded attorney's fees and costs expended in this action. Attorneys are ordered to file their fee petitions with the Court within 10 days from the date of this order.

The clerk is directed to send certified copies of this judgment and order to counsel of record and strike this case from the docket.