# CIRCUIT COURT OF THE CITY OF NORFOLK

School Board of the
City of Norfolk
and Virginia School
Boards Association

v.

Opportunity Educational
Institution
and Opportunity Educational
Institution Board

June 10, 2014

Case Nos. (Civil) CL13-6955 and CL14-1002

By Judge Charles E. Poston

In this declaratory judgment action, the Plaintiffs challenge the constitutionality of Chapter 4.1, Title 22.1, of the Code of Virginia and, specifically §§ 22.1-25(A)(4) and 22.1-27.6. Having considered the written submissions of counsel, the papers filed in this action, and the argument of counsel, the Court will grant the Plaintiff's Motion for Summary Judgment.

## Background

The Plaintiff, School Board of the City of Norfolk, is a political subdivision of the Commonwealth of Virginia that exercises supervisory authority over the public schools located within the geographical limits of the City of Norfolk. The Virginia School Boards Association ("VSBA"), formed pursuant to Virginia Code § 15.2-1303, is a non-partisan association of Virginia school boards. The VSBA is designated by that statute as an instrumentality of its members, working to promote excellence in public education through advocacy, training, and services.

The Defendants, Opportunity Educational Institution ("OEI") and Opportunity Educational Institution Board ("OEI Board"), were created by the legislation at issue. *See* Va. Code Ann. § 22.1-27.1 (2014). OEI is a statewide school division and is an educational institution created by the General Assembly. *Id*. The OEI Board is a policy board created in the Executive Branch of the government of the Commonwealth of Virginia and was also created by Virginia Code § 22.1-27.1. Further, Virginia Code § 23-14 declares certain educational institutions "to be public bodies and constituted as governmental instrumentalities for the dissemination of education." The statute includes OEI as such an institution. *Id*.

As created, the OEI Board is "vested with all the powers and duties of a local school board." Va. Code Ann. § 22.1-26.1(B) (2014). Specifically, the legislation places in the Governor the authority to appoint the Executive Director of the OEI. *Id*. § 22.1-27.1(E). The Executive Director performs for the OEI those duties that would be performed for a school division by its superintendent of schools. *Id*.

The statutory provisions at issue provide for removing supervision and control of certain under-achieving schools from the local school board and placing that authority in the OEI Board. See *Id*. § 22.1-27.2. Under the provisions of the legislation, supervision of a school denied accreditation *must* be transferred to the OEI. *Id*. § 22.1-27.2(B). Additionally, any school that has been accredited with warning for three consecutive years may be transferred to the OEI at the discretion of the OEI Board. *Id*. Upon achieving full accreditation, a school under OEI's supervision "shall be eligible to return to the local school division." *Id*. § 22.1-27.2(D) (2014). Return to the local supervision, therefore, is neither automatic nor guaranteed.

Once a school is transferred to OEI's supervision, teachers already employed in that school may be considered for retention by OEI, but OEI has the "ultimate authority to make hiring decisions." *Id*. § 22.1-27.4(A). Additionally, the local school division is required to transfer to OEI the per pupil funding for any student enrolled in a school that is under OEI's supervision. *Id*. § 22.1-27.5. Further, use of all buildings and facilities of a school transferred to OEI's supervision is given to OEI, with OEI assuming responsibility for "routine maintenance and repair." *Id*. § 22.1-27.6. Capital expenditures for those buildings and facilities remain a local responsibility. *Id*. § 22.1-27.6(B).

The School Board of the City of Norfolk has three schools that are currently denied accreditation by the Virginia Department of Education: Lafayette-Winona Middle School, William H. Ruffner Middle School, and Lindenwood Elementary School. The parties agree that, under the provision of Virginia Code § 22.1-27.2(B), the supervision of these schools will be automatically transferred to OEI. The assumption of supervision will occur on July 1, 2014, the effective date of the legislation.

Additionally, four other Norfolk Public Schools have been accredited with warning for three consecutive years: Booker T. Washington High School, Lake Taylor Middle School, Campostella Elementary School, and Tidewater Park Elementary School. Although the OEI Board has not yet made a decision with respect to these schools, they are subject to takeover by OEI at the discretion of the OEI Board. See *id.* § 22.1-27.2(B). During fiscal year 2012, the total per pupil expenditure for Norfolk Public Schools was $10,419.00. This per pupil expenditure was generated from the following sources: $1,956.00 in federal funds, $4,153.00 in state funds, $919.00 in state retail and use tax funds, and $3,392.00 from local funds. According to the Defendants, this total exceeds the per pupil expenditure for most public schools divisions in Virginia.

By Ordinance adopted on February 4, 2014, the Norfolk City Council approved the School Board's filing of this action. The action is now before the Court on the Plaintiffs' Motion for Summary Judgment. While there have been no express stipulations of fact, the Complaint and Answer, as well as the submissions in support of the parties' respective positions reveal no material issues of fact. The Defendants filed no written submission in opposition to the motion to strike and, instead, adopted the memoranda filed *Amicus Curiae* by Communities Reforming Education. Thus, the Motion for Summary Judgment is ripe for decision.

## Discussion

This action directly challenges the General Assembly's power to alter the relationship between local public schools and the local school board. The parties agree on the applicable constitutional and statutory provisions and, indeed, frequently cite the same authorities in support of their respective positions. The issue presented appears to be of first impression: may the General Assembly establish a statewide school division to which selected local public schools are assigned and which is not supervised by a school board?

Historic principles govern the analysis of such questions. First, all actions of the General Assembly are presumed to be constitutional, and any reasonable doubt concerning the constitutionality of a legislative enactment will be resolved in favor of validity. *Elizabeth River Crossings v. Meeks*, 286 Va. 286, 301 (2013). Second, the Court must consider the plain meaning of the language used in the Virginia Constitution. *Harrison v. Day*, 200 Va. 439, 448 (1959). Finally, the Constitution must be read as a whole, and all provisions must be harmonized if possible. *Board of Supervisors v. Cox*, 155 Va. 687, 704 (1931).

Examining Virginia's Constitution, it is clear that education is of great importance in the Commonwealth. Virginia's Bill of Rights includes the right to education among the qualities necessary to preservation of the government:

> The free government rests, as does all progress, upon the broadest possible diffusion of knowledge and that the Commonwealth should avail itself of those talents which nature has sown so liberally among its people by assuring the opportunity for their fullest development by an effective system of education throughout the Commonwealth.

Va. Const., art. I, § 15. This provision demonstrates the high value that Virginia places on the education of its citizenry but places no mandate upon the General Assembly. Its language is aspirational. *Scott v. Commonwealth*, 347 Va. 379, 386 (1974). However, the Constitution's Eighth Article consisting of eleven sections does place general and specific responsibilities on both the legislative and executive branches of government. The first section of Article VIII requires the maintaining of high quality public schools: "The General Assembly shall provide for a system of free public elementary and secondary schools for all children of school age throughout the Commonwealth and shall seek to ensure that an educational program of high quality is established and continually maintained." Va. Const., art. VIII, § 1.

In their submission in support of the Motion for Summary Judgment, the Plaintiffs assert that (1) the OEI legislation violates Article VIII, § 5(a), of the Constitution of Virginia and (2) the OEI legislation violates Article VIII, § 7, of the Constitution of Virginia. These arguments are addressed in turn.

Article VIII, § 5(a), of the Constitution of Virginia addresses the creation of school divisions:

> Subject to such criteria and conditions as the General Assembly may prescribe, the Board [of Education] shall divide the Commonwealth into school divisions of such geographical area and school-age population as will promote the realization of the prescribed standards of quality and shall periodically review the adequacy of existing school divisions for this purpose.

Article VIII, § 5, vests other specific powers and duties in the Board of Education as well:

> (b) It shall make annual reports to the Governor and General Assembly. The report must identify those school divisions that "have failed to establish and maintain schools meeting the prescribed standards of quality."

> (c) It shall certify to school boards qualified persons to fill the office of superintendent of school and to appoint a superintendent of schools if a school board fails to do so.

(d) It shall have authority to approve textbooks and other instructional materials.

After establishing the state-wide structure for public education, the Constitution in Article VIII, § 7, then speaks of the operation of the school divisions: "The supervision of schools in each school division shall be vested in a school board to be comprised of members selected in the manner for the term, possessing the qualifications, and to the number provided by law." Va. Const., art. VIII, § 7. The crux of the Plaintiff's argument rests on these constitutional provisions.

In response, the Defendants argue that "the General Assembly functions under no specific grant of power and its powers are broad and plenary. It may enact any law not prohibited by the Federal or Virginia Constitutions." In support of that position, the Defendants cite Article IV, § 14, of the Virginia Constitution, which grants the powers and limitations of the General Assembly. The Court agrees with the Defendants' statement of constitutional theory, but their deductions therefrom cannot withstand constitutional scrutiny.

In this action, there is no necessity to resort to the usual canons of construction because the constitutional provisions at issue are clear and unambiguous. The province of construction lies wholly within the domain of ambiguity. *School Board v. School Board*, 219 Va. 244, 247 (1978). Further, it is not disputed that the General Assembly has plenary power that is restricted only by the state and federal Constitutions. However, when the Constitution grants to another organ of government specific power, that grant necessarily restricts the power of the General Assembly as surely as if the Constitution were to restrict its power in explicit terms.

Both sides cite *Harrison v. Day*, albeit for different reasons. That opinion, historic because it marked the end of Virginia's efforts to resist the racial integration of schools, is indeed instructive in this case. *Harrison v. Day*, 200 Va. 439 (1959). There, the General Assembly had enacted statutes that prohibited the enrollment of Caucasian and African-American students in the same public school. Further, the statutes provided that any school violating this prohibition should be automatically closed and transferred to the Governor's control. *Id.*

To be sure, *Harrison* interpreted Virginia's prior Constitution, but the similarities to the action at bar are inescapable. The law being examined in *Harrison* removed certain schools from local control when a defined event occurred, *i.e.*, those that became racially integrated. Those schools were then placed under the direct control of the Commonwealth, *i.e.*, the Governor. Here schools are removed from local control when they fail to receive accreditation or are accredited with warning for three consecutive years. They are then placed under the direct control of the Commonwealth, *i.e.*, OEI and the OEI Board.

In *Harrison*, the Attorney General's reliance upon the General Assembly's plenary power was almost identical to the Defendants' position in the instant action: "In short, the Attorney General says, the General Assembly now has plenary power to deal with the public free school system in any manner it may deem fit, unfettered by any requirements of, or limitations in the Constitution of Virginia." *Id.* at 446. The Supreme Court of Virginia offered a summary response: "The provisions of the Constitution do not permit the matter to be so summarily disposed of." *Id.* (Neither the Attorney General in office in 2013, the year this action was first filed, nor the present incumbent has appeared in this action.)

Virginia's Constitution, like its predecessor, clearly intends that the minimum standards to which public schools are to be held be established centrally by the Board of Education. Va. Const., art. VIII, §§ 2, 5. According to the Constitution, the General Assembly may prescribe criteria to guide the Board of Education, *id.* § 5, and may prescribe the method of selecting members of school boards, as well as their terms and qualifications. *Id.* § 7. It may also determine the number of members comprising school boards, *id.*, but, once a school board is populated and organized in accordance with the scheme prescribed by the General Assembly, the school board, and not the General Assembly, becomes responsible for the supervision of the schools within the school division. *Id.* § 7 ("The supervision of schools in each school division shall be vested in a school board .... "). During its consideration of an action involving mandates for Virginia's public schools, another trial court succinctly described the structure for addressing public education in the Commonwealth:

> The constitutional scheme with respect to educational matters in Virginia contemplates the role of the General Assembly as formulating policies which will maintain an efficient, high quality, statewide educational system. The local school boards, on the other hand, have full responsibility for the application of statewide and local policies, rules, and regulations adopted for the day-to-day management of the public schools.

*Dennis v. County School Bd.*, 582 F. Supp. 536 (W.D. Va. 1984).

The OEI legislation removes schools from the supervision of the division's school board. Because this action is not in harmony with Article VIII, § 7, of the Constitution, the General Assembly lacks the authority to direct this result. The Virginia Supreme Court has not equivocated on this constitutional principle: "No statutory enactment can permissibly take away from a local school board its fundamental power to supervise its school system." *Russell County School Board v. Anderson*, 238 Va. 372, 383 (1989). The Constitution, like its predecessor, clearly contemplates local control of public schools subject to the state-wide standards established

by the Board of Education and the general law. The OEI legislation would remove this power from local school boards and place it in a state agency in violation of the clear mandate of Article VIII.

When enacting the OEI legislation, the General Assembly intended "to ensure that an educational program of high quality is established and continually maintained for all students throughout the Commonwealth ...." Va. Code Ann. § 22.1-27.1 (2014). Faced with localities in the Commonwealth that either tolerated or failed to remedy the failure of schools under their supervision to meet minimum standards for accreditation, the General Assembly attempted to restore a high quality educational system in these schools. The affected schools in Norfolk are clear examples of the ills intended to be corrected by this legislation. The General Assembly's plenary power is expansive, but it does not permit the disregarding of the constitutionally ordained structure for supervising local schools, even in the face of serious deficiencies. There are other means for achieving that goal. The Court's holding in the action at bar does not mean that the General Assembly lacks power to address these problems within the constitutional scheme. For example, the General Assembly may prescribe how school board members are selected, as well as their terms and qualifications. It has the power to set standards by which the local superintendent of schools is selected and evaluated.

Finally, the Plaintiffs argue that the OEI legislation also fails because Virginia Code § 22.1-27.6 removes from local school boards the authority to supervise the use of real property utilized by the affected schools. While the management of local school real estate appears not to have been directly addressed by the Supreme Court of Virginia, the local school board's authority to supervise its schools must, of necessity, include the authority to manage and supervise the use of school facilities. A statute that removes from the local school board any power that is necessary for it to supervise local schools is inconsistent with the plain meaning of Article VIII, § 7, of the Constitution of Virginia.

In summary, the Court holds:

1. Because Article VIII, § 5, of the Constitution of Virginia, vests the authority to establish school divisions in the Board of Education and not the General Assembly, Virginia Code § 22.1-25(A)(4) is not constitutional because it purports to establish a statewide school division and because it purports to create a school division that is not supervised by a school board;

2. Insofar as Chapter 4.1 of Title 22.1 of the Code of Virginia purports to divest local school boards of authority to supervise public schools within their respective school divisions, it violates Article VIII, § 7, of the Constitution of Virginia;

3. Because Virginia Code § 22.1-27.6 purports to require local school boards to relinquish control of school property to OEI and because it

purports to prohibit school boards from selling real property without OEI's permission it violates Article VIII, § 7, of the Constitution of Virginia.

The Court grants Plaintiff's prayer for an injunction.